On plaintiffs-respondents' petition for attorney fees filed February 12, petition allowed in part and denied in part September 26, 2002

Mike LEHMAN,
Bill Markham, Ronald K. Culbertson,
and Giles E. Parker,
*Plaintiffs-Respondents,*

*v.*

Bill BRADBURY,
Secretary of State
for the State of Oregon,
*Defendant-Appellant,*

*and*

Frank EIZENZIMMER,
Oregonians for Fair Term Limits,
and U.S. Term Limits,
*Intervenors-Appellants.*

(CC 01-C14353; SC S48771)

54 P3d 591

Charles F. Hinkle, of Stoel Rives LLP, Portland, filed the petition for attorney fees for plaintiffs-respondents.

Kelly W. G. Clark and Ross Day, of O'Donnell & Clark, LLP, Portland, filed the response to petition for intervenors-appellants.

No appearance for defendant-appellant.

GILLETTE, J.

## GILLETTE, J.

In *Lehman v. Bradbury*, 333 Or 231, 233, 37 P3d 989 (2002), plaintiffs—two former state representatives and two voters, one from each of the former representatives' districts—brought an action under the Uniform Declaratory Judgments Act and ORS 246.910(1) challenging the validity of Ballot Measure 3 (1992), the "Term Limits Initiative." Plaintiffs prevailed and now seek a joint and several award of $35,532 in appellate attorney fees against defendant and intervenors. Intervenors, but not defendant, filed objections. For the reasons set out below, we conclude that plaintiffs are entitled to an award of appellate attorney fees against defendant only.

No statute or contract authorizes an award of attorney fees to plaintiffs under the facts of this case. Instead of such authority, plaintiffs rely on this court's inherent power, as a court of equity, to award attorney fees on appeal in appropriate cases. *See Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975) (explaining and exercising that authority). Plaintiffs argue that, like the plaintiff in *Deras*, they are entitled to such an award because, as described in the *Deras* opinion, they brought their action "in a representative capacity" and "succeed[ed] in protecting the rights of others as much as [their] own." *Id.* at 66. Plaintiffs also assert that they meet all the prerequisites for that type of an attorney-fees award, as this court described those prerequisites in *Armatta v. Kitzhaber*, 327 Or 250, 287-88, 959 P2d 49 (1998),[1] because plaintiffs were the prevailing parties in a proceeding in equity in which they sought to "vindicate an important constitutional right applying to all citizens without any gain peculiar to" themselves, namely, the integrity of the Oregon constitutional amendment and initiative processes. Finally, plaintiffs argue that, given intervenors' vigorous opposition to plaintiffs' arguments on the merits, general principles of equity require that intervenors, in addition to defendant, be liable for any attorney-fees award. In making that argument,

---

[1] In *Armatta*, this court affirmed the trial court's award of attorney fees to the plaintiffs who successfully challenged Ballot Measure 40 (1996), a "crimes victims' rights" initiative, on constitutional grounds.

plaintiffs rely in part on *Holm and Holm*, 323 Or 581, 919 P2d 1164 (1996), in which this court held that a party who voluntarily intervenes in a marital dissolution case becomes potentially liable for an award of attorney fees under ORS 107.105(5).[2]

■　　We note at the outset that plaintiffs' petition for attorney fees comports with the requirements of Oregon Rule of Appellate Procedure 13.10(5), in that plaintiffs have stated the total amount of attorney fees claimed and the pertinent authority on which they rely for making the claim. *See* ORAP 13.10(5)(a) (stating that requirement). In such cases, we generally limit our inquiry to the objections, if any, filed by the opposing party. *See Kahn v. Canfield*, 330 Or 10, 13-14, 998 P2d 651 (2000) (so stating). We so limit our inquiry because we are "loath to undertake a wide-ranging, independent review * * *, inasmuch as any questions or doubts that we might have might not be shared by the objecting party." *Dockins v. State Farm Ins. Co.*, 330 Or 1, 9, 997 P2d 859 (2000).

■■　　In this case, defendant has not filed objections. Rule 13.10(9) provides, with respect to such cases:

> "In the absence of timely filed objections to a petition under this rule, the Supreme Court * * * will allow attorney fees in the amount sought in the petition, except in cases in which:
>
> "(a)　the entity from whom fees are sought was not a party to the proceeding; or
>
> "(b)　when the Supreme Court * * * is without authority to award fees."

The lack of objection by defendant places this court in the position of being asked to exercise its equitable powers without the benefit of advocacy from both sides respecting whether to do so. It is arguable that, given the lack of objections, Rule 13.10(9) commits this court to award the requested fees against defendant without further consideration. However, because of the extraordinary nature of the power that we exercise in *Deras*-type cases, we believe that

---

[2] By their interventions, intervenors-appellants became a party.

we should examine plaintiffs' petition for fees sufficiently to satisfy ourselves that there is at least a *prima facie* justification for exercising our equitable power before we exercise our "authority" as that term is used in Rule 13.10(9). We have done so and conclude that plaintiffs have made that showing: The proceeding was one in equity; the parties who request attorney fees prevailed; those prevailing parties vindicated an important constitutional right applying to all citizens, and at least two of them did not gain something peculiar to themselves. *See Armatta*, 327 Or at 287-88 (setting out those criteria). In addition, plaintiffs' request for an award of attorney fees comports with the applicable rules. *See Kahn*, 330 Or at 13-14 (setting that criterion). Therefore, we award plaintiffs the sum of $35,532 against defendant as reasonable attorney fees on appeal.

■    The remaining question is whether the court should make a joint and several award of attorney fees against intervenors. As noted, plaintiffs argue that it would be "equitable" to award attorney fees against intervenors and not just against defendant. Plaintiffs' theory is that, if they are entitled to an award of attorney fees against any party, then that award should run against all opposing parties whose arguments caused plaintiffs' counsel to expend time and effort. Intervenors respond that a court of equity never should exercise its power to award attorney fees against an intervening private party, because that would discourage the public from intervening in public litigation and, thus, would be contrary to the rationale for such awards that the court stated in *Deras* and *Armatta*.

■    To determine whether we should award attorney fees against an intervening party in a particular case, this court first considers the source of its authority to award attorney fees against any party. If the authority to award attorney fees flows from a statute, then the court must determine the scope of the legislature's intent respecting such awards and carry out that intent. That is the exercise in which this court engaged in *Holm* when it interpreted ORS 107.105(5), a statute governing attorney fees in appeals from orders in actions for dissolution of marriage. The court concluded that the legislature did not intend to exclude intervening parties from among those parties against whom the court could award

attorney fees. *Holm*, 323 Or at 587. Because the petition for attorney fees before us does not concern a statutory award of fees, *Holm* is not in point. By analogy, however, when the source of this court's authority to award attorney fees flows not from a statute, but from the court's inherent power as a court of equity, the court should look to the equitable principles that support such awards to determine against which party the court should award attorney fees.

In *Deras*, this court awarded attorney fees to a plaintiff who successfully challenged, on constitutional grounds, two statutes limiting the amounts that could be spent on certain campaigns. The plaintiff, at the time he filed his suit, was a candidate for state representative; the defendant was the Secretary of State. Plaintiff had lost his election bid by the time that his case reached this court. In discussing its decision to award attorney fees to the plaintiff, this court noted, first, that courts of equity have the power to award attorney fees. 272 Or at 65-66. The court explained that courts frequently exercise that power in cases in which the successful plaintiff brings an action in a representative capacity and protects others' rights in addition to the plaintiff's own. *Id.* at 66.

The court then turned to its own case law and observed that it had exercised such a power to award attorney fees to the plaintiffs in *Gilbert v. Hoisting & Port. Engrs.*, 237 Or 130, 384 P2d 136, *cert den*, 376 US 963 (1964). The plaintiffs in that case had "sued the union of which they were members to require fair and democratic elections." *Deras*, 272 Or at 66. This court explained that an award of attorney fees had been justified in *Gilbert* because

> " '[t]he preservation of the democratic process in the functioning of unions is a matter of primary concern, not only to union members but to the public as well. Those members of the union who in good faith seek to preserve the internal democracy of their union should not have to bear the expense of the successful suit.' "

*Deras*, 272 Or at 66, *quoting Gilbert* at 138. Finally, turning to the case before it, the court explained:

> "It is beyond dispute that the interest of the public in preservation of the individual liberties guaranteed against

governmental infringement of the constitution is even stronger in the present case than that present in *Gilbert*. Correspondingly, plaintiff in this case, at least as much as the plaintiffs in *Gilbert*, *should not be required to bear the entire cost of this litigation*[,] *the benefits of which flow equally to all members of the public.*"

*Deras*, 272 Or at 66 (emphasis added).

Because the dispute in *Deras* involved only two parties, the court's decision to award attorney fees to the plaintiff did not require the court to discuss its reasons for awarding those attorney fees against a *particular* defendant (or an intervenor). Indeed, this is the first case in which this court has been called on to decide who pays, rather than who receives, attorney fees under a *Deras* rationale. Nevertheless, the emphasized passage from *Deras* shows that the court's focus was on who had *benefitted* from the plaintiff's efforts. That is, the court's decision to award attorney fees against the Secretary of State was a means of shifting the cost of the litigation from the plaintiff alone to the public generally, because the public generally had benefitted from the plaintiff's successful efforts to vindicate constitutional principles.[3] *See also Armatta*, 327 Or at 289 (shift of cost of litigation from prevailing plaintiffs alone to public at large justified because "[p]laintiffs * * * sought to benefit all Oregonians, because they sought to defend the integrity of the amendment and initiative processes"). That focus helps in deciding *who* should pay an award of attorney fees.

We think that a fair summary of our case law is that, when this court chooses to exercise its inherent power to award attorney fees, it does so against the group that ultimately benefits from the prevailing plaintiffs' efforts—usually, as in this case, the people of Oregon. And, that summary illustrates why intervenors should not be required to pay: They are not a separate group that benefits from plaintiffs'

---

[3] This court's decision in *Gilbert* used a similar approach. The plaintiff union members successfully sought to make their union's election procedures fair and democratic. By awarding fees against the union of which the plaintiffs were members, this court shifted the cost of the litigation from the plaintiffs alone to the entire group of persons—the union—that directly would benefit from the plaintiffs' efforts.

success. There being no benefit to them, apart from the benefit that they receive equally with all Oregonians—a benefit they would prefer to have done without, it would not be equitable to require them to pay attorney fees. We therefore sustain their objection to plaintiffs' petition.

Plaintiffs-respondents' petition for an award of attorney fees on appeal of $35,532 is allowed against defendant-appellant and denied against intervenors-appellants.