On petition for attorney fees and costs filed February 13, and respondent's objection to petitioners' petition for attorney fees and costs filed April 2, of opinion filed January 23,* petitioners awarded their costs in amount of $1,056.55, payable by State of Oregon; petitioners' petition for award of attorney fees denied September 17, petitioners' petition for reconsideration of opinion regarding attorney fees and costs allowed by opinion November 27, 2009
See 347 Or 344, 220 P3d 744 (2009)

PENDLETON SCHOOL DISTRICT 16R;
Eugene School District 4J;
Crow-Applegate-Lorane School District 66;
Coos Bay School District 9; Corvallis School District 509J;
Josephine County Unit/Three Rivers School District;
Astoria School District 1C; Creswell School District;
Lincoln County School District; Siuslaw School District 97J;
Centennial School District; Amity School District 4J;
Reynolds School District #7; Coquille School District #8;
Parkrose School District #3; Pine Eagle School District #61;
Jefferson School District; McKenzie School District;
Alexandra Kiesling and Timothy Kiesling, minors,
by Amy Cuddy, their guardian ad litem;
Grace Peyerwold, a minor,
by David and Maria Peyerwold, her guardians ad litem;
Marshall Taunton and Harrison Taunton, minors,
by Tim and Wendy Taunton, their guardians ad litem;
and Benjamin Sherman and Claire Sherman, minors,
by Larry Sherman and Diane Nichol, their guardians ad litem,
*Plaintiffs-Appellants,*
*Petitioners on Review,*

*v.*

STATE OF OREGON,
*Defendant-Respondent,*
*Respondent on Review.*

(CC 0603-02980; CA A133649; SC S056096)

217 P3d 175

_____

* 345 Or 596, 200 P3d 133 (2009).

James N. Westwood and Robert D. Van Brocklin, Stoel
Rives LLP, Portland, filed the petition for attorney fees and
costs for petitioners on review.

Jeff J. Payne, Assistant Attorney General, Salem, filed
the objections to petition for attorney fees and costs for
respondent on review. With him on the objections were

John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

GILLETTE, J.

Durham, J., concurred in part and dissented in part and filed an opinion, in which De Muniz, C. J., and Walters, J., joined.

## GILLETTE, J.

This case involves a request that this court exercise its discretionary authority to award attorney fees to the prevailing parties in a case involving school funding. Petitioners were designated as the prevailing parties in that case, *Pendleton School Dist. v. State of Oregon*, 345 Or 596, 200 P3d 133 (2009). Petitioners (several Oregon public school districts and certain minors who would be attending public schools in Oregon) there asserted that the legislature had failed to perform a constitutional duty to adequately fund the state public school system. Petitioners sought alternative forms of relief, based on three theories: (1) a declaratory judgment, holding that the legislature had violated Article VIII, section 8, of the Oregon Constitution,[1] because it had failed to appropriate sufficient funds for the 2005-07 biennium to ensure that the state public school system would meet the quality goals established by law; (2) a similar declaratory judgment, stating that the legislature had a similar duty under Article VIII, section 3, of the Oregon Constitution,[2] but had failed to perform that duty; and (3) a mandatory injunction requiring the legislature to appropriate sufficient funds for the 2005-07 biennium to ensure that the state public school system would meet the quality goals previously described. *Pendleton School Dist.*, 345 Or at 601. The state successfully moved for summary judgment and, on petitioners' appeal, the Court of Appeals affirmed. This court then allowed petitioners' petition for review.

On review, this court reversed the trial court's judgment in part and affirmed it in part. The court began by observing that Article VIII, section 8, "presents two seemingly contradictory concepts." *Id.* at 608. That is, the

---

[1] Article VIII, section 8, of the Oregon Constitution provides, in part:

"(1) The Legislative Assembly shall appropriate in each biennium a sum of money sufficient to ensure that the state's system of public education meets quality goals established by law, and publish a report that either demonstrates the appropriation is sufficient, or identifies the reasons for the insufficiency, its extent, and its impact on the ability of the state's system of public education to meet those goals."

[2] Article VIII, section 3, of the Oregon Constitution provides:

"The Legislative Assembly shall provide by law for the establishment of a uniform, and general system of Common schools."

constitutional provision directs the legislature to fund the public school system at a certain level, but it then establishes a reporting requirement that, by its terms, contemplates that the school system may not be funded at that level. *Id.* at 607-08. This court concluded, however, that it could give effect to both concepts by considering whether each form of relief that petitioners had requested was consistent with both concepts. *Id.* at 609.

Proceeding on that basis, the court concluded that the trial court should have granted petitioners a declaratory judgment to the effect that the legislature had failed to appropriate sufficient funds for the 2005-07 biennium to meet the quality goals established by law:

"Because the state admits that the legislature failed to fund the public school system for the 2005-07 biennium at the levels required by Article VIII, section 8, we can determine and declare that the legislature failed to act in accordance with the constitutional mandate. The trial court should have entered a declaratory judgment on that limited ground."

*Id.* at 610. The court further concluded, however, that the courts could not grant a declaratory judgment that the legislature *must* appropriate in each biennium sums sufficient to ensure that the public school system meets the quality goals established by law. *Id.* at 610-11. Similarly, the court concluded that the courts could not grant an injunction requiring the legislature to fund the public school system to meet those goals. *Id.* Those rulings were based on petitioners' theory under Article VIII, section 8, of the Oregon Constitution. The court then went on to reject petitioners' additional argument that the legislature's failure to meet the quality goals established by law constituted a violation of Article VIII, section 3. *Id.* at 612-16.

The outcome of the case may be summarized briefly as follows: The court concluded that petitioners' contention that the Oregon Constitution directs the legislature to fund public primary and secondary education at certain levels is correct. (Indeed, the state essentially conceded the point.) However, the court also ruled that the provision in Article VIII, section 8, contemplating a report from the legislature

explaining its failure to fund education at the required level (when and if that was the case) is a permissible constitutional alternative to following the constitutional mandate. Thus, this court declined to provide petitioners with the affirmative relief that they requested, *viz.*, a judicial direction to the legislative branch to alter its budgetary choices and fund education at the appropriate level.

At the close of its opinion, the court stated:

"The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for entry of a declaratory judgment consistent with this opinion and for a declaration that Article VIII, section 8, of the Oregon Constitution does not authorize the injunctive relief that [petitioners] sought."

345 Or at 617. In spite of the fact that petitioners' request for a court-ordered appropriation had eluded them, however, the court designated them the prevailing party in the case—a designation justified by the fact that petitioners had succeeded in obtaining a direct statement that Article VIII, section 8, imposed a duty on the legislature to fund primary and secondary public education at a certain level, a result that the circuit court and the Court of Appeals had refused to give them.

■■ Petitioners now seek attorney fees solely under the inherent power of this court to award fees, as that concept has evolved since it first was announced in *Deras v. Myers*, 272 Or 47, 65-66, 535 P2d 541 (1975). That power allows a court in equity to award fees when a party to a proceeding in effect acts in a representative capacity to protect certain rights of others, and not just the party's own rights. This court articulated the elements of a *Deras* award in *Armatta v. Kitzhaber*, 327 Or 250, 287, 959 P2d 49 (1998), as follows:

"First, the proceeding must be one in equity. Second, the party requesting attorney fees must be the prevailing party. Finally, in filing the action, the party requesting attorney fees must have been seeking to vindicate an important constitutional right applying to all citizens without any gain peculiar to himself, as opposed to vindicating

individualized and different interests, or any pecuniary or other special interest of his own aside from that shared with the public at large."

(Internal quotation marks, alterations, and citations omitted.)

■ Petitioners contend that all three *Armatta* requirements are met here. The state does not dispute the first requirement (that the proceeding be one in equity), and we agree that it is met. The state does dispute whether petitioners meet the second criterion (*viz.*, that they are the prevailing party), but we reject the state's argument. First, this court designated petitioners as the prevailing party. Moreover, and even assuming that such designation does not end the matter, petitioners meet the classic requirement to be a prevailing party: They obtained a substantial modification of the judgment, which makes them a prevailing party. *See* ORS 20.077(3) (stating that standard).

The state makes a contrary argument, relying on *Lewis v. Dept. of Rev.*, 294 Or 139, 653 P2d 1265 (1982), but that case is distinguishable. There, the party claiming fees had sought to be included, on equal privileges grounds, within a class of taxpayers that was entitled to a certain tax exemption. However, the Tax Court ultimately denied the exemption to the group that the party had sought to join, rather than extending the exemption to him. Under such circumstances, this court observed, the party claiming fees arguably was not a prevailing party under any definition, because the only consequence of his claim was the precise opposite of what he had sought. *Id.* at 143-44. In this case, we hold that, consistent with this court's designation at the time, petitioners were the "prevailing party" in the litigation and therefore eligible for a discretionary *Deras* award of attorney fees.

■ This brings us to the third criterion: Petitioners must have been seeking to vindicate an important constitutional right that applied to the broad spectrum of citizens, rather than trying to vindicate a more narrow (often pecuniary) interest of their own. *See Armatta*, 327 Or at 287 (so noting). Some might argue that the "narrow interest" disqualification

applies here. As it happens, however, we need not even consider whether that disqualification ever would extend to public entities (like the petitioner school districts here), because—in our view—petitioners' claim for an award of attorney fees fails for a different reason.

In our view, the public interest that petitioners were trying to vindicate—the one that was pivotal to their reason for entering into the litigation—was the understandable desire to obtain a mandatory injunction requiring the legislature to reallocate available funds so that the amount assigned to public primary and secondary education would be sufficient to ensure that educational goals established by law would be met. Petitioners did not obtain that result. Instead, as already noted, they received a declaration from this court that told them (and the public at large), in effect, that the constitutional provision requires the legislature *either* to fund education adequately *or* to explain in a public report why it had not done so. Petitioners' success in obtaining a judicial declaration that the legislature had failed to fund the public school system at the appropriate level amounted to a Pyrrhic victory, because Article VIII, section 8, effectively allows the legislature to choose to provide less than adequate funding as long as it reports its failure.

Petitioners assert that they "have vindicated the constitutional right of every Oregonian to a Legislative Assembly that follows the law." Perhaps. But the path that the legislature must follow does not necessarily take it where petitioners wish it to go, and—as we made clear in our opinion on the merits—there is no available judicial mechanism to force that body in one direction as opposed to another. When the nature of the declaratory judgment that this court ordered is understood in that light, we think that it is clear that the result that petitioners have obtained is not the kind of result for the public at large that calls for the award of attorney fees under the rationale of *Deras* and the cases that have followed it. Petitioners' request for an award of attorney fees is denied.

Petitioners also have sought an award of costs against the state. The state has objected to the award. We overrule the state's objection and award the requested costs.

Petitioners are awarded their costs in the amount of $1,056.55, payable by the State of Oregon. Petitioners' petition for an award of attorney fees is denied.

**DURHAM, J.,** concurring in part and dissenting in part.

I concur in the majority's decision to award costs to petitioners. However, for the reasons expressed below, I dissent from the majority's decision to deny petitioners' request for an award of attorney fees.

It is important to acknowledge at the outset the areas of agreement between the majority and this dissent. The majority correctly explains that petitioners are the prevailing parties in this action, because

"petitioners had succeeded in obtaining a direct statement that Article VIII, section 8, imposed a duty on the legislature to fund primary and secondary public education at a certain level, a result that the circuit court and the Court of Appeals had refused to give them."

347 Or at 33. To that I would add that petitioners' litigation also clarified that the legislature is subject to a constitutional obligation, not a mere aspirational guideline, under Article VIII, section 8, to appropriate sufficient funds to meet education quality goals established by law or accept responsibility for deficient funding by reporting the reasons for any deficiency in writing.[1]

I also agree that petitioners' claim for declaratory relief under Article VIII, section 8, is the kind of claim that qualifies for an award of attorney fees under the court's inherent power. The majority recites that a qualifying claim

---

[1] The Court of Appeals had agreed with the state's contention that the seemingly mandatory terms of Article VIII, section 8 ("The Legislative Assembly shall appropriate in each biennium a sum of money sufficient to ensure * * *"), in fact embodied only "an aspirational goal of full funding for public education," because the constitutional provision also offered the legislature the option of using an explanatory report to justify any funding deficiency. *Pendleton School Dist. v. State of Oregon*, 220 Or App 56, 76, 185 P3d 471 (2008), *aff'd in part and rev'd in part*, 345 Or 596, 200 P3d 133 (2009). Relying on that reasoning, the Court of Appeals had affirmed the trial court's dismissal of the petitioners' complaint for declaratory judgment.

must be one "in equity," citing *Armatta v. Kitzhaber*, 327 Or 250, 287, 959 P2d 49 (1998), and that petitioners' claim satisfies that criterion. 347 Or at 33-34. However, this court in *Swett v. Bradbury*, 335 Or 378, 389, 67 P3d 391 (2003), concluded that the requirement in *Armatta* that the proceeding be one "in equity" was "of limited utility in determining whether to award an attorney fee." Instead, the *Swett* court concluded that a plaintiff's successful invocation of the court's authority to render a declaratory judgment concerning the disputed legal right would qualify for an award of attorney fees under the court's inherent power. As noted, petitioners' claim meets that criterion.

Finally, the majority correctly focuses on the state's objection that "petitioners did not meet the third *Deras* requirement, *i.e.*, they did not vindicate an important constitutional right applying to all citizens without any gain peculiar to themselves." The state makes two arguments in support of that objection. First, the state asserts that petitioners succeeded only in obtaining reaffirmation of an undisputed proposition of law—that the legislature must follow the law—but that that principle was never in issue here. Second, the state claims that petitioners' victory does not apply to all of Oregon's citizens and, instead, benefits only students currently attending a public primary or secondary school and, arguably, their parents.

The majority does not address those objections. Instead, the majority focuses on the fact that petitioners sought, among other things, a mandatory injunction requiring the legislature to appropriate additional funds for public education and the court did not approve that requested relief. The majority labels that requested remedy "pivotal" to petitioners' choice to enter into this litigation, but it cites nothing in the record to support that claim. 347 Or at 35. Finally, the majority asserts that petitioners' failure to obtain an injunction regarding additional public school funding shows that they won only a Pyrrhic victory, implying that, in reality, they lost the war.

The majority's response to the state's objections is seriously flawed. The state's argument at least concedes that

the proper focus is on the success that petitioners' action achieved, not on a form of requested relief that the court did not grant. That premise stems from petitioners' status as prevailing parties who, but for the error below, should have received a favorable judgment on their claim.

The central value of the remedy of declaratory judgment, codified in the Uniform Declaratory Judgments Act at ORS 28.010 to 28.160, is the elimination of uncertainty and insecurity that result from the ambiguous description of legal rights and responsibilities in laws, contracts, and other writings. ORS 28.120 provides:

> "This chapter is declared to be remedial. The purpose of this chapter is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered."

Before petitioners filed this action, the terms of Article VIII, section 8, were nothing if not ambiguous. That provision seemed to impose a mandatory duty on the legislature to appropriate funds sufficient to ensure compliance with quality goals established by law. However, the text of the provision also linked that funding obligation, by the conjunction "and," with a reporting obligation concerning both sufficient *and insufficient* appropriations. No court previously had addressed and resolved the multiple ambiguities in that provision. At least from petitioners' standpoint, if Article VIII, section 8, imposed a dual obligation on the legislature to both appropriate sufficient funds and to publish a report concerning the quality of public education in Oregon, then it was clear from the available evidence that the legislature was violating its legal duty under that constitutional provision.

Petitioners' complaint, as noted, sought a declaratory judgment concerning the legislature's duties under Article VIII, section 8, and, in addition, sought an injunction requiring the state to provide sufficient funding for the then-current biennium. The majority ascribes great significance to petitioners' unsuccessful request for a mandatory injunction

requiring greater appropriations for public education. However, as this court pointed out in *Swett*, a request for injunctive relief in addition to declaratory relief is "pointless," 335 Or at 389, because the courts assume that "the responsible state officials would honor the court's declaration without the necessity of an accompanying injunction." *Id.* Thus, properly analyzed, petitioners' claim sought a declaratory judgment regarding the legislature's duties under Article VIII, section 8, to remove the uncertainty and insecurity resulting from that provision's ambiguity.

Both the trial court and the Court of Appeals determined that petitioners' complaint should be dismissed. As this court noted in its opinion, the Court of Appeals had determined that the word "shall" in Article VIII, section 8, was intended to be "permissive" and, in reality, meant "may." *Pendleton School Dist.*, 345 Or at 607. This court rejected that position and concluded that petitioners were entitled to a declaratory judgment "that the legislature failed to fully fund the public school system, if that is the case." *Id.* at 610. On the basis of the state's admissions, this court also declared that "the legislature failed to act in accordance with the constitutional mandate." *Id.* This court also concluded that it could not grant petitioners' further request for a declaratory judgment requiring the legislature to fund the public school system at the levels required by Article VIII, section 8, because that relief would conflict with the reporting provisions in the measure.

This court's opinion establishes that, in addressing its responsibilities under Article VIII, section 8, the legislature is carrying out a legal duty imposed by the constitution, not an aspirational guideline, as the Court of Appeals viewed the matter. The majority is wrong to discount the value of that declaratory judgment simply because it lacks a judicial enforcement mechanism. Just as this court in *Swett* assumed that public officials will comply with their duties as declared by the courts, we also assume that public officials will comply with legal duties imposed by the constitution, and will do so without the need for a court order. We cannot make that assumption regarding aspirational statements, even when they appear in the constitution. In that respect, petitioners'

successful appeal has clarified what the legislature is obligated, not merely permitted, to do, even if no further judicial scrutiny ever occurs in the future. That is a legally significant result for petitioners and the public.

I would take into consideration, however, the fact that petitioners did not succeed in obtaining a significant part of the relief that they sought. In similar proceedings concerning the recovery of attorney fees pursuant to a statute, the pertinent rule, ORAP 13.10(5)(b), directs the court to consider relevant statutory factors, including those set out in ORS 20.075(1) and (2), in determining the amount of any fee award. One such factor is "the results obtained." ORS 20.075(2)(d). In considering an equitable award of prevailing party fees in this nonstatutory context, I would consider reducing the amount of an award because the result that petitioners obtained is less than they desired. I would not, however, completely deny a prevailing party attorney fee award in this case.

Finally, I reject the state's contention that petitioners' victory does not force the legislature to behave differently. Petitioners' action sought to clarify the constitutional responsibility of the state legislature in appropriating public funds for public education throughout the state. All citizens benefit from the elimination of uncertainty and insecurity regarding the legislature's compliance with its constitutional responsibilities in that regard. It is clear that petitioners' action protected the public interest in compliance by the legislature with duties imposed by the constitution for the protection and education of all public school students. *See Deras v. Myers*, 272 Or 47, 66, 535 P2d 541 (1975) (applying similar standard in awarding attorney fees; plaintiff's action protected the "interest of the public in preservation of the individual liberties guaranteed against governmental infringement of the constitution"). An exercise of the court's inherent authority to award an attorney fee to the prevailing party is appropriate in that context.

In conclusion, I would allow an award of prevailing party attorney fees in this case. I would also consider reducing the award to take into consideration the result obtained by petitioners. I dissent from the majority's decision to refuse

to award an attorney fee in any amount to the prevailing parties.

For the reasons expressed above, I concur in part and dissent in part from the majority's decision.

De Muniz, C. J., and Walters, J., join in this opinion.