Submitted January 21, petitioners' statement of costs and disbursements allowed in sum of $1,053.00, petitioners' petition for attorney fees denied April 8, 2010

Fred VANNATTA
and Center To Protect Free Speech, Inc.,
an Oregon Not-For-Profit Corporation,
*Plaintiffs-Appellants,*

*v.*

OREGON GOVERNMENT ETHICS COMMISSION,
formerly known as the
Oregon Government Standards and Practices Commission;
and State of Oregon,
*Defendants-Respondents.*

(CC 07C20464; CA A140080; SC S057570)

228 P3d 574

John DiLorenzo, Jr., Davis Wright Tremaine LLP, Portland, and Gregory A. Chaimov, Aaron K. Stuckey, and Alan J. Galloway, filed the petition for attorney fees, statement of costs and disbursements, and reply to defendant-respondents objection to petition for attorney fees.

Anna M. Joyce, Assistant Attorney General, Salem, John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General, filed the objection to attorney fees for Oregon Government Ethics Commission.

DE MUNIZ, C. J.

Durham, J., specially concurred and filed an opinion.

## DE MUNIZ, C. J.

In the underlying litigation, petitioners sought declaratory and injunctive relief based on various challenges to certain statutory restrictions on the solicitation, offering, and receipt of gifts and entertainment by various public officials and private persons. The trial court granted summary judgment in favor of the Oregon Government Ethics Commission and the State of Oregon (the state). On review, this court affirmed in part and reversed in part the trial court's summary judgment determination and remanded the case to the circuit court for further proceedings. *Vannatta v. Oregon Government Ethics Comm.*, 347 Or 449, 222 P3d 1077 (2009). Petitioners now seek costs on appeal and an award of attorney fees under this court's inherent equitable power to make such awards, as described in *Deras v. Myers*, 272 Or 47, 65-66, 535 P2d 541 (1975). For the reasons that follow, we deny petitioners' attorney fees claim and grant petitioners' request for costs.

In this court, petitioners claimed that the statutory gift restrictions and limits on entertainment expenses in ORS 244.025(1) to (4) and ORS 244.042 violated Article I, sections 8 and 26, of the Oregon Constitution and the First Amendment to the United States Constitution. This court held that the parts of ORS 244.025(1) to (4) and ORS 244.042 that restrict the *receipt* of gifts and payment of expenses for entertainment did not violate the constitutional provisions relied on by petitioners. However, this court also held that the statutory restriction on *offering* gifts and payment of entertainment expenses violated petitioners' free expression rights guaranteed under Article I, section 8, of the Oregon Constitution. Finally, this court determined that petitioners lacked the requisite standing necessary under ORS 28.020 to seek declaratory and injunctive relief from the restrictions on the *solicitation* of gifts and entertainment expenses in ORS 244.025(1) to (4) and ORS 244.042.

Petitioners do not assert any statutory entitlement to attorney fees. Instead, petitioners argue that they should be awarded attorney fees based on this court's inherent power in equity, a so-called *Deras* award. This court summarized the

elements necessary to support such an award in *Armatta v. Kitzhaber*, 327 Or 250, 287, 959 P2d 49 (1998):

> "First, the proceeding must be one in equity.[1] Second, the party requesting attorney fees must be the prevailing party. Finally, in filing the action, the party requesting attorney fees must have been seeking to vindicate an important constitutional right applying to all citizens without any gain peculiar to himself, as opposed to vindicating individualized and different interests, or any pecuniary or other special interest of his own aside from that shared with the public at large."

(Internal quotation marks and citations omitted; punctuation modified accordingly.)

The parties disagree whether petitioners satisfy the second and third *Deras* requirements. Petitioners argue that they prevailed in this case, noting that this court designated petitioners as the prevailing party in this court's opinion on the merits. Petitioners also argue that they brought this action to vindicate an important constitutional right that protects all citizens of this state. In support of that argument, petitioners assert that they

> "[s]ought to have available to them the ability to conduct fact-finding trips and pay for meals and entertainment to facilitate their political speech. [Petitioners] had no particular pecuniary interest in the outcome however. Rather, their interests were in safeguarding the right to communicate with public officials, a right shared by all Oregonians. The relief applied not only to registered lobbyists, but anyone who had a legislative or administrative interest in matters before public officials."

The state responds that this court reversed the trial court on a single ground, noting that this court concluded that petitioners were entitled to a judgment declaring the restrictions on offering gifts unconstitutional, but otherwise concluding that petitioners' claims were without merit. Because this court also held that public officials could be

---

[1] In *Swett v. Bradbury*, 335 Or 378, 389, 67 P3d 391 (2003), this court determined that the "proceeding in equity" criterion "is of limited utility in determining whether to award an attorney fee" and, depending on the circumstances, may be of no utility at all. The parties here nonetheless agree that this proceeding is one in equity, for purposes of *Deras* and *Armatta*.

prohibited from receiving those gifts, the state argues that petitioners have gained "in essence an empty power to offer gifts or provide entertainment that cannot be received." Consequently, the state argues that this court should not deem petitioners prevailing parties for purposes of their attorney fee claim. The state also argues that petitioners do not meet the third *Deras* requirement because petitioners' interests are individualized interests that are different from those of most Oregonians, "who likely do not desire to offer their public officials unlimited gifts and trips in connection with lobbying activities."

■    We agree with the parties that this is a proceeding in equity and that the first *Deras* requirement is satisfied. We therefore turn to the other requirements that must be satisfied, beginning with the question whether petitioners are prevailing parties for purposes of their attorney fee request.

In *Pendleton School Dist. v. State of Oregon*, 347 Or 28, 217 P3d 175, *adh'd to as modified on recons*, 347 Or 344, 220 P3d 744 (2009), this court recently considered a similar issue. There the petitioners—school districts and public school students—filed an action against the state for declaratory and injunctive relief, alleging that the legislature had violated certain constitutional requirements concerning funding for public education. This court agreed with petitioners that the legislature had failed to fund the public school system in accordance with the constitution. However, the court declined to provide the petitioners with the affirmative relief that they requested, *viz.*, a judicial direction to the legislative branch to alter its budgetary choices and increase public school funding. The petitioners later requested attorney fees. This court concluded that the petitioners satisfied the first two *Deras* requirements, that is—the proceeding was in equity and the petitioners had obtained a "substantial modification of the judgment," and thus were the prevailing parties under ORS 20.077(3).[2] This court stated:

_____

[2] ORS 20.077(3) provides

"Notwithstanding subsection (2) of this section, upon appeal of a judgment in an action or suit in which one or more claims are asserted for which the prevailing party may receive an award of attorney fees, the appellate court in its discretion may designate as the prevailing party a party who obtains a substantial modification of the judgment."

"In spite of the fact that petitioners' request for a court-ordered appropriation had eluded them, however, the court designated them the prevailing party in the case—a designation justified by the fact that petitioners had succeeded in obtaining a direct statement that Article VIII, section 8, imposed a duty on the legislature to fund primary and secondary public education at a certain level, a result that the circuit court and the Court of Appeals had refused to give them."

*Pendleton School Dist.*, 347 Or at 33.

Here, although petitioners succeeded in only one of their challenges to the gift and entertainment restriction statutes, this court's opinion reversed the trial court judgment and held that petitioners were entitled to a declaratory judgment that the restrictions on offering gifts and entertainment violated petitioners' free expression right under Article I, section 8. Thus, we conclude that petitioners did obtain a "substantial modification of the judgment" regardless of whether the public officials involved ultimately can accept the offers made. Petitioners obtained a holding from this court that Article I, section 8, protects their right to offer gifts to public officials. That conclusion is consistent with this court's exercise of discretion in designating petitioners as the prevailing party pursuant to ORS 20.077(3) in the court's opinion issued in this case. On our further review occasioned by this attorney fee proceeding, we determine that petitioners are prevailing parties in this litigation based on the substantial modification of the trial court judgment they obtained in this court.

We therefore turn to the third inquiry required under *Deras*—that is, whether petitioners were seeking to vindicate an important constitutional right for all citizens without any gain peculiar to themselves. At the outset, we note that the mere fact that petitioners may have some individualized interest will not necessarily disqualify them from an award of attorney fees. For example, in *Armatta*, at least some of the plaintiffs in that case were opposed to the substance of Measure 40 due to the effect that the measure had on them individually. Nevertheless this court awarded the plaintiffs' attorney fees, stating:

"plaintiffs primarily sought to enforce the provisions of the Oregon Constitution that relate to amendment and revision of that document, and ultimately prevailed on their claim that Measure 40 was not passed in compliance with the separate-vote requirement of Article XVII, section 1. Plaintiffs, therefore, sought to benefit all Oregonians, because they sought to defend the integrity of the amendment and initiative processes. That is the type of public benefit that, in our view, makes an award of attorney fees appropriate."

327 Or at 289.

■ However, where plaintiffs' self-interests are more central, an award of *Deras* attorney fees is not appropriate. In *Vannatta v. Keisling*, 324 Or 514, 931 P2d 770 (1997) (*Vannatta I*), the plaintiffs, who included potential political candidates and a political action committee, brought a challenge to the constitutionality of a measure providing for campaign spending limits. The plaintiffs prevailed on some of their claims and requested attorney fees. This court observed:

"It is true that, to some degree, the same 'interest of the public in preservation of the individual liberties guaranteed against governmental infringement of the constitution' on which this court relied in awarding attorney fees in *Deras* is present in this case. * * * That, however, is not enough. *Deras* was a case in which the petitioner was attempting only to vindicate interests of the public at large. By contrast, some of the petitioners, both individual and institutional, who have brought the present proceeding are not so disinterested. Their victory may benefit many members of the public at large, but that is true of virtually any case involving the right to speak, write, or print freely on any subject whatever. The overall benefit to the public is only an ancillary result in this case. Petitioners such as the political action committee and the potential political candidate have individualized and different interests that they seek to vindicate. Under such circumstances, this court ordinarily will decline to exercise its equitable power to award attorney fees. *See Dennehy v. Dept. of Rev.*, 308 Or 423, 781 P2d 346 (1989) (explaining the foregoing rationale for denying request for attorney fees in the context of a tax case that affected many taxpayers). The request for an award of attorney fees is denied."

*Id.* at 548-49 (citation omitted).

Petitioners here are not disinterested parties—as they state in their petition for attorney fees, they "sought to have available to *them* the ability to conduct fact-finding trips and pay for meals and entertainment to facilitate *their* political speech." (Emphasis added.) In our view, petitioners here have significant individualized interests that they sought to vindicate, and the potential benefit to the public was only ancillary.

Moreover, it is questionable whether petitioners' litigation in this case actually has provided the public at large with any real substantive benefit that would support an award of *Deras* attorney fees. Petitioners have established the right to offer gifts and free entertainment to public officials, but no public official may accept any such offer. In similar circumstances, this court has determined that no award of attorney fees was warranted. In *Pendleton School Dist.*, this court observed that, although the petitioners successfully had obtained a judicial declaration that the legislature had failed to fund the public school system at the appropriate level, that success amounted only to a Pyrrhic victory because the legislature lawfully could continue to provide less than adequate funding. Consequently, this court rejected the petitioners' request for attorney fees in that case, stating that "the result that petitioners have obtained is not the kind of result for the public at large that calls for the award of attorney fees under the rationale of *Deras* and the cases that have followed it." *Pendleton School Dist.*, 347 Or at 35. Similarly here, although petitioners have established the right to offer gifts and free entertainment to public officials, this court simultaneously upheld the statute prohibiting public officials from accepting them. In our view, the net result of our holding is not such a significant public benefit that the public at large should pay petitioners' attorney fees.

Petitioners also have requested an award of costs in the amount of $1,053.00. Petitioners have supported that request with a statement detailing the costs and disbursements incurred on appeal. The state does not object to the request for an award for costs, and we agree that an award of costs is warranted in this case.

Petitioners' statement of costs and disbursements is allowed in the sum of $1,053.00. Petitioners' petition for attorney fees is denied.

**DURHAM, J.,** specially concurring.

The issues before the court concern plaintiffs' requests for an award of attorney fees and for costs and disbursements. I join in the majority's decision to award costs and disbursements to plaintiffs. I also agree with the majority that plaintiffs' request for attorney fees should be denied. However, I would deny plaintiffs' petition for attorney fees for a reason that the majority does not discuss: the petition for attorney fees does not comply with the rule that prescribes the procedure for claiming attorney fees in this case.

ORAP 13.10 provides, in part:

"(1) This rule governs the procedure for petitioning for attorney fees in all cases [subject to one exception not applicable here].

"\* \* \* \* \*

"(5)(a) A petition shall state the total amount of attorney fees claimed and the authority relied on for claiming the fees. The petition shall be supported by a statement of facts showing the total amount of attorney time involved, the amount of time devoted to each task, the reasonableness of the amount of time claimed, the hourly rate at which time is claimed, and the reasonableness of the hourly rate.

"(b) If a petition requests attorney fees pursuant to a statute, the petition shall address any factors, including, as relevant, those factors identified in ORS 20.075(1) and (2) or ORS 20.105(1), that the court may consider in determining whether and to what extent to award attorney fees.

"(6) Objections to a petition shall be served and filed within 14 days after the date the petition is filed. A reply, if any, shall be served and filed within 14 days after the date of service of the objections."

(Footnote omitted.)

Plaintiffs, invoking that rule, filed a petition seeking recovery of $75,000 in attorney fees in this case. The petition

correctly asserted that plaintiffs had prevailed on their challenge to several statutory restrictions on giving gifts to public officials, candidates for office, and relatives and members of their households in connection with lobbying activities. *See Vannatta v. Oregon Government Ethics Comm.*, 347 Or 449, 466-68, 222 P3d 1077 (2009) (discussing plaintiffs' successful challenges to ORS 244.025(2), (3), and (4)(b) and (c).

The petition for attorney fees incorporated a detailed description of the time spent on various services by plaintiffs' lawyers in this case, producing a total attorney fee of $113,587.24. The petition asserted that that charge would represent "a reasonable fee assuming Plaintiffs had prevailed on all of their claims." The petition also asserted, somewhat inconsistently, that the excerpted time and charges "represent only a portion of the total time that was actually expended on this matter." The petition explained how plaintiffs arrived at the requested fee of $75,000 in the following passage:

"Because Plaintiffs prevailed on some, but not all of their claims, Plaintiffs believe a fair fee would be $75,000.00. This discounted amount reflects the fact that Plaintiffs prevailed on one-half of their significant claims and would have had to incur certain fees notwithstanding the number of claims they addressed."

The petition also asserted that the proposed fee award was "fair for additional reasons[,]" including the facts that plaintiff Center to Protect Free Speech had raised funds to pay for only part of the legal expenses at the trial level, but nothing for plaintiffs' attorney fees on appeal, and that plaintiffs' lawyers had devoted effort to resisting the consolidation of this case with other litigation but had not included that time in the fee petition in this case. The petition included no explanation of the assertion that plaintiffs had prevailed on "one-half of their significant claims."

The state filed an objection. It asserted, among other things, that the petition provided insufficient detail about the listed time entries to allow the state (and, by inference, the court) to determine how much attorney time was spent on plaintiffs' successful claim concerning the statutory bans on offering of gifts to public officials.

Plaintiffs filed a reply to the state's objection. In their reply, plaintiffs stated that they had "suggested $75,000.00 as an appropriate fee based upon a 'rough justice' discounting of 50%." The reply also stated that a "reasonable range might also be between $57,000.00 and $75,000.00[,]" and purported to explain how a figure within that range "could" be justified by applying an "alternative methodology suggested herein." The reply then set out different categories of attorney time that, according to plaintiffs' counsel, "could relate" to various tasks related to plaintiffs' successful claim.

I would sustain the state's objection, because the petition for attorney fees fails to comply with ORAP 13.10(5)(a). The petition fails to show "the reasonableness of the amount of time claimed," as required by that rule, beyond the bare assertion that a fee of $75,000 would be, in plaintiffs' opinion, "fair." The petition contains no statement of the attorney time or legal services devoted to the successful claim for which plaintiffs' requests a fee award. The practice of listing all legal services devoted to all claims, both successful and unsuccessful, forces the court and the responding party to speculate about the legal services that counsel might have devoted to the claim that was successful. ORAP 13.10(5) requires the petitioning party to identify *in the petition* the time reasonably claimed on the successful claim. Plaintiffs violated that requirement.

Under some circumstances, a petitioner may face a difficult if not impossible task in allocating attorney time to a particular successful claim rather than to other claims that are not eligible for an award of attorney fees. It is clear that a lawyer must perform some services in the course of litigation that are not easily divisible between successful and unsuccessful claims. An example might be the preparation of a notice of appeal. ORAP 13.10(5) requires, even in that circumstance, that the petition explain which services, in petitioner's view, cannot be separated and why the amount of attorney time claimed nevertheless is reasonable. Petitioners do not satisfy that requirement by stating in a conclusory manner that the fee sought is "reasonable" or "fair."

It is not the function of the reply, filed under ORAP 13.10(6), to supply the information that should have been,

but was not, set out in the petition. That approach undermines the responding party's all-important opportunity to state timely objections to the petition, thereby framing the issues that the court must address and resolve. This court has drawn attention in the past to the procedural significance of the responding party's objection to a petition for attorney fees:

> "In [proceedings to recover attorney fees under ORAP 13.10(5)], we generally limit our inquiry to the objections, if any, filed by the opposing party. *See Kahn v. Canfield*, 330 Or 10, 13-14, 998 P2d 651 (2000) (so stating). We so limit our inquiry because we are 'loath to undertake a wide-ranging, independent review * * *, inasmuch as any questions or doubts that we might have might not be shared by the objecting party.' *Dockins v. State Farm Ins. Co.*, 330 Or 1, 9, 997 P2d 859 (2000)."

*Lehman v. Bradbury*, 334 Or 579, 582, 54 P3d 591 (2002). For the reasons identified in *Lehman*, a petitioner seeking attorney fees cannot postpone making the required statement of the reasonableness of the amount claimed until the filing of the reply under ORAP 13.10(6). Petitioners' attempt to do so here is of no avail.

Even if we were to consider the assertions that petitioners presented in their reply, they do not overcome the deficiencies regarding the petition noted above. Claims for attorney fees supported only by a conclusory claim of "rough justice" and fee formulas that "could" be conceived as justifiable are no substitute for the statements of fact required by ORAP 13.10(5).

I would permit counsel broad latitude in presenting the facts called for under ORAP 13.10(5). The rule does not impose rigid requirements that only the most fastidious petitioner could satisfy. The petition here, however, falls short of substantial compliance with ORAP 13.10(5)(a). The state's objection in that respect is well-taken.

I do not necessarily reject the majority's discussion of substantive shortcomings regarding the petition, but neither is there a need to address them. Logic suggests that the court should address first the state's objection that plaintiffs' petition for attorney fees does not comply with this court's

mandatory procedural requirements for a valid petition. If, as here, the petition falls short on procedural grounds, there is no need to address and decide the state's more complex or controversial substantive objections to the petition.

Additionally, petitioners may be entitled to a more in-depth discussion of the substantive problems that the majority has identified in its opinion. For example, according to the majority, plaintiffs have obtained only a small victory here, because their constitutional right to offer gifts to public officials is qualified by a valid statutory limit on the ability of public officials to receive gifts. However, plaintiffs' litigation succeeded in invalidating four separate statutory provisions that, according to this court, unconstitutionally restricted protected speech in the form of offers of gifts to public officials: ORS 244.025(2), (3), and (4)(b), (c). As a result, plaintiffs and other citizens will be entitled to speak on that matter to their public officials and representatives without fear of civil enforcement, fines, or other restraints. Those are not mere "ancillary" benefits to the public, or so it would seem.

The majority seeks to downplay plaintiffs' success. But the majority does not demonstrate that plaintiffs' success has resulted in a narrower right to speak than the plaintiffs claimed. Plaintiffs won that argument completely. Rather, the majority focuses on the *audience* for plaintiffs' protected speech and, specifically, the statutory restraints that limit the authority of the *audience* to respond to the speech in question in a particular way (*i.e.*, by accepting an offer of a gift). But the majority's focus on statutory regulations on the *receipt* of gifts by public officials—all subject to change or repeal by the legislature—may too quickly evade the genuine public interest that gave rise to the court's practice of awarding attorney fees in these cases in the first place: "the interest of the public in preservation of the individual liberties guaranteed against governmental infringement of the constitution * * *." *Deras v. Myers*, 272 Or 47, 66, 535 P2d 541 (1975).

The majority cites one case, *Pendleton School Dist. v. State of Oregon*, 347 Or 28, 217 P3d 175 (2009), in support of its assertion that it is "questionable" whether this litigation has produced a substantive benefit for the public. 348 Or at

123-24. But, in *Pendleton School District*, the plaintiffs argued, erroneously, that the state constitution specifically guaranteed the higher level of school funding for which they advocated. This court concluded that the plaintiffs' view of the meaning of the state constitution was incorrect and that the state constitution itself proscribed any judicial remedy to compel the additional school funding that the plaintiffs sought. Thus, the court's view of the "Pyrrhic" nature of the plaintiffs' victory resulted from its conclusion that the state constitution itself denied the remedy—increased school funding—that was the basis for the plaintiffs' claim, and that the plaintiffs' constitutional law arguments in that regard were incorrect.

The *Pendleton School District* case does not fit easily as a precedent for the majority's action here. Plaintiffs here were correct, not incorrect, about the validity of the statutory restrictions on giving gifts to public officials. Additionally, nothing in Article I, section 8, of the Oregon Constitution limits plaintiffs' available remedies. On the contrary, plaintiffs have obtained the usual legal remedy: this court invalidated each of the four statutory provisions, cited above, prohibiting the offering of gifts to public officials. The plaintiffs in *Pendleton School District* could not claim equivalent legal success or benefit in the public interest from their litigation under the state constitution.

If plaintiffs have secured more than a hollow victory for the right of free speech, that result would seemingly justify a substantively different analysis, and perhaps a different result, by this court. But, for the reasons stated earlier, there is, in this case, a logically compelling reason to avoid resolving those difficult substantive questions about plaintiffs' petition for attorney fees: the petition does not satisfy the requirements of ORAP 13.10(5)(a). Therefore, I concur in the result that the majority reaches, but I do not join in its reason for denying the petition for attorney fees.

I specially concur.