On petition for attorney fees of respondents on review filed May 3, 2002,
respondents on review awarded $21,992.50 April 24, 2003

Michael SWETT;
David Fidanque;
and the American Civil Liberties
Union of Oregon, Inc.,
*Respondents on Review,*

*v.*

Bill BRADBURY,
Secretary of State;
and the State of Oregon,
*Petitioners on Review,*

*and*

Virginia MARKELL;
Laurence Perry; and Susan Remmers,
*Respondents.*

(CC 98-C-20484; CA A107552 (Control),
A107799; SC S48116)

67 P3d 391

Thomas M. Christ, of Cosgrave Vergeer Kester LLP, Portland, filed the petition for attorney fees for respondents on review.

Philip Schradle, Special Counsel to the Attorney General, Salem, filed the objection to petition for attorney fees for petitioners on review. With him on the objection were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Paul B. Gamson, of Smith, Gamson, Diamond & Olney, Portland, filed objections to the petition for attorney fees for respondents.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.*

GILLETTE, J.

---

* Leeson, J., resigned January 31, 2003, and did not participate in the decision of this petition for attorney fees.

**GILLETTE, J.**

This application for an award of attorney fees on review arises out of a successful challenge to the constitutionality of Ballot Measure 62 (1998).[1] *See Swett v. Bradbury*, 333 Or 597, 43 P3d 1094 (2002) (declaring measure unconstitutional because it violated separate-vote requirement of Oregon Constitution). Respondents on review, plaintiffs below (plaintiffs), the successful challengers of the measure, seek an award of attorney fees from the state and from respondents (intervenors below) for plaintiffs' efforts in securing that outcome in this court. For the reasons that follow, we allow their petition against the state.[2]

Ordinarily, a court awards attorney fees to a litigant only if a statute or contract authorizes such an award. *See, e.g., Samuel v. Frohnmayer*, 308 Or 362, 366, 779 P2d 1028 (1990) (stating principle). Plaintiffs do not claim a right to attorney fees under either of those sources of law. Instead, plaintiffs assert that they are entitled to an award of attorney fees under the rationale for such awards described in *Deras v. Myers*, 272 Or 47, 66-67, 535 P2d 541 (1975), and most recently explained by this court in *Armatta v. Kitzhaber*, 327 Or 250, 287-88, 959 P2d 49 (1998). *See also Lehman v. Bradbury*, 334 Or 579, 583, 54 P3d 591 (2002) (applying *Armatta* criteria for such awards). Under that rationale, a "court of equity" has inherent power to award attorney fees to a prevailing litigant in appropriate circumstances. *Armatta*, 327 Or at 287, *quoting Deras*, 272 Or at 65-66.

---

[1] Measure 62 added ten new sections to the Oregon Constitution. Among other things, it required recipients of political contributions of $500 or more to disclose those and subsequent contributions to the Secretary of State; it required chief petitioners on all statewide initiative petitions or referenda to disclose all contributions received or expenditures made in support of those petitions or referenda to the Secretary of State; and it required entities receiving contributions or making expenditures for the purpose of influencing the collection of signatures on statewide initiative or referendum petitions to file a statement of organization with the Secretary of State, form a petition political committee, and disclose contributions and expenditures to the Secretary of State.

[2] Respondents are not liable for attorney fees in these circumstances. *See Lehman v. Bradbury*, 334 Or 579, 583-86, 54 P3d 591 (2002) (explaining principle). Their objection to the petition is sustained.

Plaintiffs seek an award of attorney fees totaling $21,992.50, which represents 80 hours of time devoted to their successful effort in the case. Plaintiffs assert that such an award is justified because they "successfully defended 'the integrity of the amendment and initiative process,' an achievement that benefitted all Oregonians." (Quoting *Armatta*, 327 Or at 289.) Defendants (collectively, "the state") object, arguing that (1) plaintiffs vindicated private, not public, interests in challenging Measure 62; (2) the theory under which this court has made such awards does not support such awards; and (3) the relief that plaintiffs requested in this case was legal, not equitable, and therefore does not support an award of attorney fees under this court's precedents.

This court in *Armatta* presented the following overview of the history of the court's exercise of its inherent, equitable power to award attorney fees:

> "Since issuing its decision in *Deras*, this court has not allowed another attorney fee award under the principles set out in that case. In denying such requests, the court has clarified that there are a number of prerequisites that must be fulfilled before such an award is appropriate. First, the proceeding must be one in equity. *See, e.g., Dennehy v. Dept. of Rev.*, 308 Or 423, 428, 781 P2d 346 (1989) (denying attorney fees, in part, because the action was not one in equity); *Cook v. Employment Division*, 293 Or 398, 401, 649 P2d 594 (1982) (same). Second, the party requesting attorney fees must be the prevailing party. *See Gugler v. Baker Co. Ed. Serv. Dist. (Gugler III)*, 305 Or 570, 574, 754 P2d 903 (1988) (denying fees because the plaintiffs had not prevailed in their action) * * *. Finally, in filing the action, the party requesting attorney fees must have been seeking to 'vindicat[e] an important constitutional right applying to all citizens without any gain peculiar to himself,' *Dennehy v. City of Gresham*, 314 Or [600, 602, 841 P2d 633 (1992)], as opposed to vindicating 'individualized and different interests,' *Vannatta [v. Keisling*, 324 Or 514, 549, 931 P2d 770 (1997)], or 'any pecuniary or other special interest of his own aside from that shared with the public at large.' *Dennehy v. Dept. of Rev.*, 308 Or at 427."

327 Or at 287. After the foregoing recital, this court held that the *Armatta* plaintiffs were entitled to an award of attorney fees because, in filing their action, they

"primarily sought to enforce the provisions of the Oregon Constitution that relate to amendment and revision of that document, and ultimately prevailed on their claim that [Ballot] Measure 40 [1996] was not passed in compliance with the separate-vote requirement of Article XVII, section 1."

*Id.* at 289. With that background in mind, we turn to the issues raised by the present petition.

We note at the outset that the state does not contest three aspects of plaintiffs' petition for an award of attorney fees. Plaintiffs were the prevailing party, and the state does not challenge either the reasonableness of the amount of time expended by counsel for plaintiffs or the hourly rate charged.

The state does assert, however, that this court should deny the petition for attorney fees for three other reasons. First, the state asserts that, in seeking to have Measure 62 invalidated, plaintiffs were acting in their own interests, and not in the interests of the public at large. For example, the state asserts that one plaintiff, Swett, alleged that he is a public employee who favored one part of the measure, but not others. We are not persuaded. We cannot discern how that fact makes Swett any different from any other citizen who voted for or against the measure. Nothing in our jurisprudence suggests that holding a point of view respecting the measure in question is disqualifying. Indeed, if caring about the outcome of the vote is to be a disqualifying criterion, then virtually all future plaintiffs would be disqualified from receiving attorney fees unless they can aver that they really do not care about the outcome.

The state argues that plaintiff Fidanque and plaintiff American Civil Liberties Union of Oregon (ACLU), of which Fidanque is executive director, had a special interest in that they did not wish to see the ACLU burdened with certain requirements of the measure. Again, we fail to see how that makes Fidanque and the ACLU different from any other citizen who had an interest in the measure and in what he or it would have been required to do if the measure had been adopted properly. In addition—and this point is important as to all three plaintiffs—plaintiffs' position respecting the

measure itself is not the point. What is the point is that plaintiffs seek to vindicate the Oregon Constitution's limitations on the amendment or revision of that document. *See Armatta*, 327 Or at 289 (making similar point respecting prevailing parties in that case).

The state relies on *Vannatta*, 324 Or at 548-49, as supporting a contrary conclusion. That case involved a challenge to Ballot Measure 9 (1994), a measure that provided for mandatory contribution limits in state political campaigns and voluntary expenditure limits by candidates, and contained other provisions relating to political contributions and expenditures. Plaintiffs there successfully challenged certain parts of the measure on the ground that those parts violated the right to free expression guaranteed by Article I, section 8, of the Oregon Constitution. However, this court declined to award them attorney fees, explaining:

> "*Deras* was a case in which the petitioner was attempting only to vindicate interests of the public at large. By contrast, some of the petitioners, both individual and institutional, who have brought the present proceeding are not so disinterested. Their victory may benefit many members of the public at large, but that is true of virtually any case involving the right to speak, write, or print freely on any subject whatever. The overall benefit to the public is only an ancillary result in this case. Petitioners such as the political action committee and the potential political candidate have individualized, and different, interests that they seek to vindicate."

*Id.* at 548-49. The foregoing statement demonstrates the distinction between *Vannatta* and the present petition. Here, the individual plaintiffs primarily vindicated a public interest, rather than their own.

■ In summary, we do not deem any of these plaintiffs to be disqualified from receiving an award of attorney fees on the ground that the dominant characteristic of their case was that they were vindicating a private interest of their own, rather than vindicating an interest of the public generally. The state's contrary argument on that ground is not well taken.

The state next argues that this court's decision in *Armatta* to award attorney fees, and the approach that it represents, is an ill-advised policy choice, one that the court should have left to the legislature. The state's argument disregards the fact that this court and others that grew out of the Anglo-American legal tradition have exercised such an inherent power to award attorney fees for a very long time. We nonetheless assume, as the state appears to assume, that the legislature may decide that it has a role to play in this area, notwithstanding this court's inherent equitable powers. However, we are not persuaded that it was inappropriate in *Deras* to consider using those powers in that case, and we are not persuaded that this court should reconsider wholly and abandon its case law since *Deras* in that respect. The state is at liberty to take its policy argument to the political branches of government and, if those branches are receptive, we shall examine their choices respectfully. For now, however, we adhere to our decisions in *Deras* and *Armatta*.

Finally, the state argues that plaintiffs in this case are disqualified from receiving an award of attorney fees because it is a prerequisite to such an award that the relief sought by the prevailing parties be equitable in nature, while the relief that plaintiffs sought here—a declaration that Measure 62 violated the separate-vote requirement of the Oregon Constitution—was legal in nature.

The state is correct that this court has stated that, to qualify for an award of attorney fees, parties in the position of plaintiffs here must seek some form of equitable relief. *See Armatta*, 327 Or at 287; *Dennehy v. Dept. of Rev.*, 308 Or at 427-28; *Cook v. Employment Division*, 293 Or at 401 (all so indicating). It also is true that declaratory judgment proceedings can be legal or equitable in nature, depending on the prayer for relief. *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 571, 994 P2d 112 (1999). Finally, it is true that plaintiffs here sought only a declaration of their rights, and did not request specifically any purely "equitable" form of relief. However, for the reasons that follow, we now conclude that this court's reliance on that criterion in prior cases was *dicta* in some, overstated in others, and should not be followed here.

As noted, this court specifically has adverted to the requirement that a party seeking an award of attorney fees must have sought equitable relief in at least three cases: *Armatta, Dennehy v. Dept. of Rev.*, and *Cook*. However, an examination of those cases reveals that none actually depended on that criterion for its disposition. In *Armatta*, for example, this court merely repeated the criterion from earlier cases (*Dennehy v. Dept. of Rev.* and *Cook*), without separately assessing it. (The plaintiffs in *Armatta* specifically sought the equitable remedy of injunction so there was no need to reexamine the criterion. *Id.* at 288.)

*Dennehy v. Dept. of Rev.* was a tax case in which the plaintiff sought an award of attorney fees because he had challenged successfully a practice of the Oregon Department of Revenue by which that department "rounded up" tax assessments on individual parcels of real property. *Id.* at 425. After first determining that the plaintiff did not qualify for an award under a statute on which he relied, this court then turned to the issue whether it should exercise its inherent equitable power to make an award. The court compared the position of the *Dennehy* plaintiff with that of the plaintiff in *Deras* and concluded:

> "The present case, by contrast, involves a personal pecuniary interest of the plaintiff (*albeit* a very small one), *i.e.*, it is an action at law in which plaintiff sought a declaration of his rights and the return of money. No injunctive or other equitable relief was sought or granted. Furthermore, the action was brought in a court that has been granted limited and circumscribed authority to award attorney fees in certain cases."

*Dennehy*, 308 Or at 428 (citing *Cook* and *Samuel*). Two aspects of the foregoing statement are important: First, the court again did not independently assess the "proceeding in equity" criterion; it simply cited *Cook* for the proposition. Second, the court identified another ground for its decision that was independent and complete: The plaintiff was vindicating a personal financial interest of his own. That latter criterion was sufficient; the discussion of the additional requirement that the proceeding be one in equity was a *dictum*.

*Cook* was a case involving a petition for an award of attorney fees arising out of the petitioner's successful challenge of a Court of Appeals decision that itself had been concerned with criteria for the award of fees under a statute, ORS 183.495. *Cook*, 293 Or at 400. The court first determined in summary fashion that the petitioner did not qualify for an award of attorney fees under the statute. *Id.* The petitioner also argued, however, that the court should award attorney fees because he had acted as a "private attorney general" and had secured an outcome that would benefit many other litigants. The court responded to that argument as follows:

> "In support of his [alternative] claim for attorney fees for acting as a 'private attorney general,' petitioner cites no authority whatsoever. We are aware of none. Perhaps petitioner relies upon our decisions to award attorney fees in *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975), and *Gilbert v. Hoisting & Port. Engrs.*, 237 Or 130, 384 P2d 136, 390 P2d 320, *cert den* 376 US 963 (1964). *In those cases we allowed awards of attorney fees based upon the inherent power of a court of equity. In this matter we did not sit in equity.*"

*Cook*, 293 Or at 400-01 (emphasis added).

*Cook* is the only case that we have found in which it may be said that the court actually relied on the "proceeding in equity" criterion to justify its action in denying an award of attorney fees. The case is not helpful analytically, however, because the petitioner had not even made the argument that the court first identified and then rejected. Nonetheless, the court made the statement. An examination of the cases on which the *Cook* court relied helps explain why it was made.

*Gilbert* was a case brought against a union by some of its members in which the plaintiffs sought (and received) equitable relief—an injunction. The trial court also awarded attorney fees to the plaintiffs. On appeal, the union objected to the award of attorney fees on the ground that no statute authorized such an award. This court overruled that objection, stating:

> "The authority of a *court of equity* to award attorneys' fees is not derived solely from the statutes. *Equity* may under

some circumstances as a part of its inherent equitable powers award attorneys' fees."

*Gilbert*, 237 Or at 137 (emphasis added).

The successful plaintiffs in *Gilbert* also sought a further award of attorney fees for successfully defending against the union's appeal. In a separate opinion devoted strictly to that issue, *i.e.*, attorney fees on appeal, this court explained:

> "In *Adair v. McAtee*, 236 Or 391, 385 P2d 621, 338 P2d 748 [(1964)], recently decided, we held that 'attorney's fees will not be allowed upon appeal in the absence of a statute so providing or in the absence of any express agreement that the prevailing party is entitled to attorney's fees on appeal.' We were not there concerned with the right to attorney's fees where the allowance of such fees is regarded as an essential ingredient in the equitable interest sought to be protected, as it is in the present case.
>
> "In *Gilbert et al. v. Hoisting & Portable Engineers, Local Union No. 701*, * * * we affirmed an allowance of attorneys' fees for services rendered in the lower court. There * * * we noted that 'Equity may under some circumstances as a part of its inherent equitable powers award attorneys' fees.' It is not necessary, therefore, to look to a state or an agreement between the parties (as in *Adair v. McAtee, supra*) to sustain plaintiffs' motion in this case."

*Gilbert*, 237 Or at 140-41 (internal citation omitted).

In *Deras*, the plaintiff specifically sought both an injunction and an award of attorney fees. He acknowledged the "American rule" that courts will not award attorney fees in the absence of an authorizing statute or contract, but "correctly point[ed] out that *courts of equity* have the inherent power to award attorney's fees." *Deras*, 272 Or at 65-66 (emphasis added). This court stated:

> "This power frequently has been exercised in cases where the plaintiff brings suit in a representative capacity and succeeds in protecting the rights of others as much as his own. We recognized this *equitable exception to the general rule* in *Gilbert v. Hoisting & Port. Engrs.*, * * * a substantially similar case to the one at hand."

*Id.* at 66 (emphasis added).

Given the foregoing reliance of the *Gilbert* and *Deras* courts on the fact that those cases were proceedings in equity, the *Cook* court's reference to "the inherent power of a court of equity" is understandable. But that reference also is not specific as to how, and to what extent, an equity court's inherent power must have been invoked, or exercised, on the merits of a case, to make the power available to award attorney fees. This case squarely presents that question.

Aided by our nearly 30 years of experience in analyzing *Deras*-type claims, we now conclude that the "proceeding in equity" criterion is of limited utility in determining whether to award an attorney fee and is of no utility at all if it is read to require a specific prayer for, or the actual award of, equitable relief. We reach that conclusion for several reasons. First, the criterion specifically was established in *Cook*, a case in which this court did not have the benefit of advocacy concerning the criterion. Second, *Cook* was a case that could (and probably should) have been decided the same way on another criterion, *viz.*, the lack of statutory authorization for an award, when the plaintiff's theory on the merits relied on a statute. Third, the criterion has not been utilized dispositively since *Cook*. Fourth, and most important, the criterion imposes a pointless pleading requirement, as we shall explain below.

As noted, this case on the merits involved a declaratory judgment proceeding and, in such proceedings, a court has the power to grant equitable remedies where appropriate. *Ken Leahy Construction*, 329 Or at 571. Although it is true that plaintiffs in the case on the merits confined their prayer to a request for a declaration of their rights, they could have sought an injunction as well. They did not so do because it would have been pointless. As the state itself acknowledges, equitable relief— such as an injunction against enforcement of Measure 62— was not necessary, because this court and the lower courts would assume that the responsible state officials would honor the court's declaration without the necessity of an accompanying injunction. *See Burke v. Children's Services Division*, 288 Or 533, 548, 607 P2d 141 (1980) (concluding that declaratory relief need not include injunction, because court assumed responsible state agencies would comply with law as determined by court). It thus

would be an odd triumph of form over substance to sustain the state's argument here, thereby requiring future litigants formalistically to allege that the state as a defendant in a similar declaratory judgment proceeding will not obey a trial court's declaration of the applicable law to qualify for an award of attorney fees. We hold that it is sufficient under these circumstances that the plaintiffs invoked the court's declaratory judgment powers.

For the foregoing reasons, we conclude that the state's objections are not well taken.

Plaintiffs, respondents on review, are awarded $21,992.50 as reasonable attorney fees on review.