Argued and submitted January 16, 2020; decision of Court of Appeals affirmed, and case remanded to circuit court for further proceedings May 6, 2021

James B. De YOUNG,
a resident of Damascus,
*Respondent on Review,*

*v.*

Kate BROWN,
in her official capacity
as Governor of Oregon;
and State of Oregon,
*Petitioners on Review,*

*and*

CLACKAMAS COUNTY,
a political subdivision of
the State of Oregon,
*Defendant-Respondent,*

*and*

DAMASCUS,
a municipal corporation,
*Defendant.*

(CC 16CV12583) (CA A162584) (SC S067385)

486 P3d 740

Court of Appeals awarded plaintiff attorney fees based on his success in obtaining a Court of Appeals ruling in *De Young v. Brown*, 297 Or App 355, 443 P3d 642 (2019), that the 2016 vote to disincorporate the City of Damascus was invalid. State defendants petitioned the Supreme Court for review, arguing that the Court of Appeals erred in allowing plaintiff's request for fees under the substantial benefits theory for equitable fee awards. *Held*: Plaintiff acted in a representative capacity to the benefit of others and the benefit to all residents of the state when he obtained the Court of Appeals' decision clarifying how the legislature may make referrals to voters on matters of local government structure; that benefit was sufficiently substantial to support an award of fees under the substantial benefit theory. Thus, the Court of Appeals did not err in awarding plaintiff fees under the substantial benefit theory.

The decision of the Court of Appeals is affirmed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Philip Michael Thoennes, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review Kate Brown. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Tyler Smith, Tyler Smith & Associates PC, Canby, argued the cause and filed the brief for respondent on review.

Kristian Spencer Roggendorf, The Zalkin Law Firm, Evergreen, Colorado, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

BALMER, J.

The decision of the Court of Appeals is affirmed, and the case is remanded to the circuit court for further proceedings.

---------------
* 300 Or App 530, 451 P3d 651 (2019).

**BALMER, J.**

This case concerns attorney fees awarded by the Court of Appeals following its decision in *De Young v. Brown*, 297 Or App 355, 443 P3d 642 (2019) (*De Young I*). The question before this court is a narrow one—namely, whether the Court of Appeals erred in allowing plaintiff's petition for attorney fees under the "substantial benefit" theory. For the reasons explained below, we hold that the Court of Appeals did not err, and, thus, we affirm.

Plaintiff De Young was a city councilor and resident of the City of Damascus. Defendants are Kate Brown, in her official capacity as Governor, and the State of Oregon. We refer to defendants, collectively, as "the state." In *De Young I*, the Court of Appeals considered the validity of an effort to disincorporate the City of Damascus. In a 2013 election, the residents of the city had voted on a referral from the city council to disincorporate the city. Although a majority of those participating in the election voted in favor of disincorporating, the number fell short of the absolute majority for disincorporation required by law. *See* ORS 221.610 (2013) (requiring affirmative vote of a "majority of the electors of the city" to disincorporate). Subsequently, in 2015, the legislature passed House Bill (HB) 3085, which referred to the voters of Damascus the decision whether to disincorporate and specifically provided that a majority of those voting, rather than an absolute majority of the city's electors, would be sufficient to disincorporate. That legislative referral appeared on the ballots of residents of the city as Measure 93 in the May 2016 election.

Prior to the 2016 election, plaintiff sought declaratory and injunctive relief, seeking to enjoin the scheduled disincorporation vote. He alleged that HB 3085 violated the city charter, state statutes, and the Oregon Constitution. The trial court denied plaintiff's request to enjoin the election, and the city residents subsequently voted to disincorporate. Following the election, the city paid its debts, transferred its assets to Clackamas County, surrendered its charter, terminated or transferred its employees, and, essentially, ceased to exist. Plaintiff continued his lawsuit, seeking a declaration that the vote had violated various statutory and constitutional

requirements and, therefore, the city had not been validly disincorporated. The trial court granted summary judgment in favor of the state, declaring Measure 93 valid.

Plaintiff appealed, renewing his arguments that Measure 93 violated state statutory and constitutional provisions. The Court of Appeals ultimately agreed with plaintiff on his statutory argument, holding that ORS 221.610 and ORS 221.621 (2013) provided the only means by which a city could disincorporate and that, because Measure 93 had not complied with those statutes, it was invalid. *De Young I*, 297 Or App at 370-71. Because it disposed of the case on statutory grounds, the Court of Appeals did not reach plaintiff's constitutional argument. *Id*. at 355. Shortly after the Court of Appeals decision was issued, the legislature passed Senate Bill (SB) 226 (2019) "to cure any defect in the procedures, and to ratify the results" of the 2016 disincorporation vote. Or Laws 2019, ch 545, § 4(1). The legislature gave this court original jurisdiction to determine the validity of the substantive provisions of that law, *id*. § 4(2), which we did in *City of Damascus v. State of Oregon*, 367 Or 41, 472 P3d 741 (2020). In that case, we concluded that "SB 226 is valid and that it accomplishes what the legislature intended, *i.e.*, it gives effect to the 2016 vote by the city's residents to disincorporate." *Id*. at 43.

Following the Court of Appeals' decision in *De Young I* but prior to the issuance of this court's decision in *City of Damascus*, plaintiff petitioned that court for an award of attorney fees and costs in the *De Young I* litigation, amounting to a little over $40,000. Plaintiff argued that he was entitled to fees because he was the prevailing party and because he sought "to vindicate important constitutional rights, and was not seeking a pecuniary gain for himself other than to protect the statutory and constitutional rights of those in Damascus who wanted the law to be followed." The state objected to the award of attorney fees, arguing that, "because [plaintiff] prevailed on statutory and not constitutional grounds, [Court of Appeals case law] forecloses any attorney fee award." Plaintiff filed a reply asserting that, contrary to the state's argument, the court's inherent equitable power to award attorney fees does not require a finding of a constitutional violation.

The Court of Appeals framed the threshold issue as "whether a plaintiff must prevail on a constitutional issue in order for us to exercise our inherent equitable power to award attorney fees." *De Young v. Brown*, 300 Or App 530, 532, 451 P3d 651 (2019) (*De Young II*). The Court of Appeals explained that "[t]he inherent equitable power to award attorney fees was first recognized in Oregon in *Gilbert* [*v. Hoisting & Port. Engrs.*, 237 Or 130, 384 P2d 136 (1963), *aff'd as modified*, 237 Or 140, 390 P2d 320, *cert den*, 376 US 963 (1964),]" and that recovery of fees was "limited to cases * * * in which equitable relief would in effect be denied or severely inhibited unless the plaintiff who prevails in the suit is awarded attorneys' fees." *De Young II*, 300 Or App at 533 (internal citations and quotation marks omitted).

The Court of Appeals held ultimately that "the vindication of a constitutional right has never been required by the Supreme Court in awarding attorney fees under a court's equitable powers," and that "[t]he 'substantial benefit' theory * * * is a form of the equitable attorney fee doctrine that does not require the vindication of a constitutional right." *Id.* at 539. The Court of Appeals described the "substantial benefit" theory as:

> "allow[ing] equitable attorney fees where there is a representative or derivative suit brought for the benefit of the entire organization or where there are other circumstances in which equitable relief would in effect be denied or severely inhibited unless the plaintiff who prevails in the suit is awarded attorneys' fees. The action must confer a 'substantial benefit' on others."

*Id.* at 539-40 (internal citations and quotation marks omitted). The Court of Appeals agreed with plaintiff that his litigation had directly benefitted the residents of Damascus by holding that the legislative referral and the resulting disincorporation election failed to comply with state statutes and that it also had "potentially" conferred an indirect benefit on other residents of the state "in regard to how the legislature makes referrals to voters." *Id.* at 540.[1] Applying

---

[1] We recognize, of course, that the Court of Appeals' decision in *De Young I* was superseded by the legislature's enactment of SB 226 (2019), which this court held to be valid in *City of Damascus*, 367 Or at 73-74, and that the disincorporation of the city was not undone. But *De Young I* itself was never reversed and stands as a valid appellate court interpretation of the statutes at issue there.

the substantial benefit theory, the Court of Appeals allowed plaintiff's petition for attorney fees and costs in the amount of about $16,000 and remanded for a determination of fees and costs incurred in the circuit court. *Id.* at 532.

The state petitioned this court for review. In its petition, the state did not renew its argument that fees could be recovered only for a successful constitutional challenge, and not for a statutory one. The state instead responded to the Court of Appeals' substantial benefit theory, asserting that the "beneficiaries" of the litigation were the residents of Damascus, but a fee award against the state would be paid by residents of the whole state—state taxpayers. The state contended that the fee award would "spread the cost of litigation not just among those who benefitted from it, but also to those who would not benefit from it," contrary to the purpose of the substantial benefit theory. The state also argued that any potential benefit from the litigation was uncertain, because of the pending *City of Damascus* case before this court. In the state's view, the substantial benefit theory does not permit an award of fees here because, "[e]ven assuming that reincorporating Damascus would confer a substantial benefit on those residents who opposed Measure 93, the Court of Appeals' ruling did not confer that benefit * * * [b]ecause there is still substantial uncertainty whether Damascus will ever again exist as a city[.]"

Plaintiff filed a response to the state's petition for review, arguing that the state's articulation of the Court of Appeals' decision was misleading because the Court of Appeals did not conclude, contrary to the state's assertion, that *only* the residents of Damascus benefitted from that court's ruling in *De Young I*. Rather, plaintiff noted that the Court of Appeals considered the benefits to be "both in regard to the direct litigation and potentially in regard to how the legislature makes referrals to voters." *De Young II*, 300 Or App at 540. Therefore, plaintiff argued, the Court of Appeals correctly understood that its opinion in *De Young I* clarified the permissible scope of legislative referrals and of the statutes regarding disincorporation and that that clarification inured to the benefit of all Oregon residents—not just those directly impacted by the 2015 referral. Thus, plaintiff contended, the court's attorney fee opinion correctly held

that the substantial benefit theory permits the costs of the litigation to be shared by those beneficiaries—all Oregon residents. This court allowed review.

Before this court, as noted, the state largely abandons the argument that it made before the Court of Appeals—that, because plaintiff vindicated a statutory right rather than a constitutional right, he is not entitled to fees. It also retreats from the argument made in its petition for review that the only beneficiaries of the litigation are the residents of Damascus. Instead, the state argues primarily that the Court of Appeals improperly awarded plaintiff fees under the substantial benefit theory because any "benefit" from the litigation is actually held in common by all residents of the state and that such a diffuse, indirect benefit is not sufficiently substantial to justify an award of fees.[2]

We agree with the state that Oregon generally adheres to the so-called "American rule"—that the prevailing party in a civil action ordinarily is not entitled to recover attorney fees from the losing party unless some statute or contractual provision authorizes the recovery of fees. *See Swett v. Bradbury*, 335 Or 378, 381, 67 P3d 391 (2003) ("Ordinarily, a court awards attorney fees to a litigant only if a statute or contract authorizes such an award."); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 US 240, 247, 95 S Ct 1612, 44 L Ed 2d 141 (1975) (describing the "American rule"). That rule, however, is not absolute: "This court for many years has recognized an equitable exception to the American rule," *Crandon Capital Partners v. Shelk*, 342 Or 555, 565, 157 P3d 176 (2007), and it is well established that an Oregon court may use its inherent equitable power to award attorney fees, even in the absence of a contract or statutory scheme authorizing fees, *Gilbert*, 237 Or at 137.

Our case law on the equitable award of attorney fees makes clear that an award is permissible in a variety

---

[2] One of plaintiff's arguments is that the state did not preserve its substantial benefit argument regarding attorney fees. It is true that the state's argument has evolved over the course of the attorney fee dispute, but the state has consistently taken the position that the litigation did not confer a sufficiently significant benefit on any group to justify an equitable award of attorney fees. We conclude that the issue is sufficiently preserved for our review.

of circumstances but that an award of fees does not automatically follow from a favorable outcome. *Crandon*, 342 Or at 565 (noting that, in certain "circumstances, the court *may* spread the cost of litigation to avoid unjust enrichment" (emphasis added)). This court has identified three prerequisites for a fee award under that inherent equitable authority: (1) the proceeding must be one in equity, (2) the party requesting fees must have been the prevailing party, and (3) the party requesting fees must have been seeking to vindicate a right that applies to others as well as the party itself, without an overriding personal pecuniary interest. *Armatta v. Kitzhaber*, 327 Or 250, 287, 959 P2d 49 (1998); *Gilbert*, 237 Or at 137-38. Where a party has met those prerequisites, this court has permitted the award of equitable attorney fees in three different circumstances: where a party vindicates an important constitutional right applying to all residents of the state, without personal gain to the party, *Deras v. Myers*, 272 Or 47, 66, 535 P2d 541 (1975); where a party creates, discovers, increases, or preserves a common fund of money to which others also have a claim, *Strunk v. PERB*, 341 Or 175, 181, 139 P3d 956 (2006); and where a party's litigation confers "substantial benefit" on others, even if neither constitutional nor financial, *Krause v. Mason*, 272 Or 351, 358-59, 537 P2d 105 (1975).

      In reviewing whether a lower court has properly awarded fees under its inherent equitable authority, we assess for legal error whether the fee award meets the three prerequisites described above and comes within a qualifying circumstance. *See Swett*, 335 Or at 384 (considering first whether plaintiffs were "*disqualified* from receiving an award of attorney fees" for failing to meet one of the prerequisites (emphasis added)). *See also Dennehy v. Dept. of Rev.*, 308 Or 423, 427-28, 781 P2d 346 (1989) (concluding that the Tax Court erred in awarding fees because the plaintiff did not meet several of the prerequisites). In this case, the state argues that the Court of Appeals misapplied the "substantial benefit" test and committed legal error in awarding plaintiff attorney fees. It asserts that the Court of Appeals erred in holding that "the benefit conferred in this case— both in regard to the direct litigation and potentially in regard to how the legislature makes referrals to voters—is

substantial enough to warrant an award of attorney fees." *De Young II*, 300 Or App at 540.

Unlike statutory or contractual attorney fees awards, the purpose of awarding equitable attorney fees is not to punish a wrongdoer or to make a plaintiff whole. *Crandon*, 342 Or at 566. *Cf. Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990) (describing the legislative history of ORS 20.105(1) "allowing for the award of attorney fees based on the misconduct of the opposing party or attorney"). Rather, the purpose of equitable fees is to recognize that, when a plaintiff has vindicated the rights of others in a significant way, equity may require that the costs of that litigation be borne not just by the plaintiff, but also by others who have benefitted. *See Crandon*, 342 Or at 565 (holding that the court may award attorney fees "when it would be inequitable for that party to bear all the costs of the litigation"). The three circumstances that we have identified—vindication of a constitutional right, common fund, and substantial benefit— rely on this basic premise: that fees awarded under the court's equitable authority "are awarded not *** to make the plaintiff whole by shifting all costs to the wrongdoer, but instead to spread the costs among those on whose behalf the case was brought and who benefitted from the plaintiff's efforts." *Id.* at 566.

Although our focus here is on whether plaintiff's success in *De Young I* conferred a "substantial benefit" on others, the "vindication of a constitutional right" basis for an attorney fee award is not irrelevant to our inquiry. Despite the fact that we have not always awarded fees to plaintiffs who have brought successful constitutional challenges, *see Pendleton School Dist. v. State of Oregon*, 347 Or 28, 35, 217 P3d 175 (2009) (declining to award fees following successful constitutional challenge), we often have done so when a plaintiff has vindicated an important constitutional right that applies to all Oregonians. *See Armatta*, 327 Or at 289 (awarding fees where plaintiffs sought declaratory and injunctive relief, arguing that a measure submitted to and adopted by the voters was unconstitutional); *Swett*, 335 Or at 378 (same). In part, this is because we have assumed, often without extended discussion, that the vindication of a constitutional right likely confers a benefit on individuals

other than the plaintiff and that such a benefit—since, after all, it is constitutional—may well qualify as "substantial." We have recognized, in the constitutional context, that "[i]t is beyond dispute that the interest of the public in preservation of the individual liberties guaranteed against governmental infringement of the constitution is even stronger" than the interest in fair voting in union elections, which permitted a fee award in *Gilbert*. *Deras*, 272 Or at 66. If a plaintiff can demonstrate that the constitutional right was sufficiently "important" and that the litigation clarified the scope of that right, we have been more likely to conclude that the plaintiff conferred a "substantial" benefit on other Oregonians and that an equitable attorney fee award was justified. Although some statutory rights may be of similar importance to fundamental constitutional rights, when a nonconstitutional right has been vindicated, the nature of the benefit may be less apparent, and the beneficiaries may need to be identified more precisely. In both instances, however, the central issue for the court is whether the nature of the benefit conferred on those beyond the plaintiff is sufficiently substantial that it would be inequitable for the plaintiff to bear the costs alone.

Here, the Court of Appeals' decision in *De Young I* was based on its holding that Measure 93 was invalid because it was inconsistent with statutes regarding disincorporation elections, rather than any constitutional provision. It is clear, however, that election laws hold a special place in the spectrum of constitutional and statutory rights. For that reason, this court has long held that

> "[e]lection laws should be liberally construed to the end that the people may have the opportunity of expressing opinion concerning matters of vital interest to their welfare. Expression, not suppression, tends towards good government. The great constitutional privilege of a citizen to exercise his sovereign right to vote should not be taken away by narrow or technical construction."

*State ex rel. v. Hoss*, 143 Or 383, 389, 22 P2d 883 (1933). Although not included in the constitution itself, Oregon's election laws implement the constitutional right to vote in all elections. *See* Or Const, Art II, § 2 (subject to age, residency, and registration requirements, "[e]very citizen of

the United States is entitled to vote in all elections \*\*\*");
*id.* § 8(1) ("The Legislative Assembly shall enact laws to support the privilege of free suffrage [and] prescribing the manner of regulating, and conducting elections \*\*\*."). Moreover, the issues in the underlying litigation here involved not just laws governing elections generally, but also the concept of home rule embodied in Article XI, section 2, and Article IV, section 1(5), of the Oregon Constitution, which grant the "authority of local governments to establish and modify their political structures as they see fit." *City of Damascus*, 367 Or at 54. In *City of Damascus*, this court recounted the history of the enactment of those constitutional provisions in 1906, describing that "the primary concern of those who advocated for the measures was that the voters of municipalities be permitted to determine the structure and organization of their own municipal governments[.]" *Id.* at 55. To that end, in plaintiff's fee petition, he asserted generally that "[a]ll of the claims made in [the complaint] related to voting rights, constitutional rights, or statutory election and process rights that he asserted were violated by" the legislature. Ultimately, however, as described above, the Court of Appeals disposed of the case not on constitutional grounds, but on relatively narrow statutory grounds, despite the myriad of constitutional arguments raised by plaintiff. *De Young II*, 300 Or App at 535.

The question before us, then, is whether the Court of Appeals erred in determining that the benefits conferred here were sufficiently substantial that it would be inequitable for the plaintiff to bear those costs alone. The Court of Appeals did not identify and analyze a specific benefit to persons other than the plaintiff that resulted from the underlying litigation; rather, the court stated generally that "the benefit conferred in this case—both in regard to the direct litigation and potentially in regard to how the legislature makes referrals to voters—is substantial enough to warrant an award of attorney fees." *Id.* at 540. For the reasons that follow, we agree with the Court of Appeals that the litigation provided a sufficiently significant benefit to the people of the state as a whole; therefore, we do not address whether the litigation provided any additional or different benefit to the people of Damascus.

To determine whether the benefits that result from litigation are sufficiently substantial to justify an equitable attorney fee award, it is essential to identify, as precisely as possible, the benefits and the beneficiaries. *Krause*, 272 Or at 358-59 (affirming an award of fees based on the benefits that the plaintiff shareholders' litigation conferred specifically on the corporation and other shareholders). It is not enough to say that, of several benefits, surely one of them was sufficiently substantial to justify an award of fees. Likewise, as described above, the central principle behind both the constitutional and substantial benefit theories is that the costs are shared among those who benefitted from the litigation, *Crandon*, 342 Or at 566, whether those who "benefit" are shareholders of a corporation, voters of a particular city, or the residents of the state as a whole. If the benefit or beneficiaries have not been identified precisely, the court cannot analyze whether the benefits were sufficiently substantial to justify a fee award.

We do not intend to say that litigation cannot have multiple benefits or benefit various groups differently. *See, e.g.*, *Moro v. State of Oregon*, 360 Or 467, 493-94, 384 P3d 504 (2016) (discussing the various groups of beneficiaries of PERS litigation). With any litigation, there are ripples of consequences for the parties and often for nonparties. Some consequences may be beneficial, and some may not, and it is not always possible to assess the significance of any benefits at the close of the litigation. In the common fund cases, the question is relatively straightforward—the litigation produces a fund from which the plaintiff's fees may be paid, and the costs are shared by everyone entitled to a portion of the common fund. However, in the substantial benefit cases, the litigation does not produce a fund from which those fees can be drawn. *Gilbert*, 337 Or at 138 ("[T]he fact that no money or property is involved does not detract from the importance of the litigation."). When litigation produces a common fund, then those who benefit from the litigation are those who benefit from the fund. But, without a common fund and without a determination of the identity of beneficiaries, it is impossible to say whether an award of fees will distribute the costs of the litigation among those who benefit from the litigation. *See Moro*, 360 Or at 477 (considering how

to fund a fee award where the underlying litigation benefit-
ted different groups of PERS members differently).

In this case, plaintiff contends that the litigation
resulted in substantial direct benefits to him and to the res-
idents of Damascus (among others) and indirect benefits to
all residents of the state, because of the Court of Appeals'
clarification in *De Young I* of local home rule authority,
including statutes regarding disincorporation and legisla-
tive referrals to local voters. The state agrees that plaintiff
succeeded in obtaining judicial "clarification of the way that
the legislature must refer election measures when it seeks
to exempt a vote from existing statutory requirements."
However, the state disputes that this was a "direct" benefit
to plaintiff or the residents of Damascus, arguing that it
does not accrue solely to them, "but applies with equal force
to every person in the state." More significantly, the state
asserts that "such an abstract, widely held interest cannot be
considered substantial enough to warrant an equitable fee."
We disagree.

Our case law does not require that each individual
who benefits from litigation receive a "substantial" benefit.
Rather, the benefit provided to the beneficiaries as a whole
must be a substantial one. Oregon courts have never held
that the size of the group benefitted determines the signifi-
cance of the benefit bestowed. *See Tanner v. OHSU*, 161 Or
App 129, 133, 980 P2d 186, *rev den*, 329 Or 528 (1999) ("The
fact that \*\*\* our decision on the merits of [the] claims will
directly benefit only a relatively small class of persons is not
controlling. How small or large the directly benefitted class
may be is not the point \*\*\*. What controls is the extent to
which the constitutional issue resolved is a matter of pri-
mary concern to the public at large." (Internal quotation
marks omitted.)). Like class actions or actions under the
Unfair Trade Practices Act, ORS 646.605 to 646.656, per-
mitting an award of attorney fees in some substantial ben-
efit cases may encourage individuals to bring legal actions
to vindicate not only their own rights but also the rights of
others. *See, e.g.*, *Honeywell v. Sterling Furniture Co.*, 310 Or
206, 213, 797 P2d 1019 (1990) (describing that, in the unlaw-
ful trade practices context, the "availability [of attorney
fees] assures that wronged consumers can obtain counsel

to prosecute claims that otherwise might be impractical to pursue because such claims would require an expenditure of attorney time the value of which greatly exceeded the value of the goods or services in question"). When successful actions confer important, but individually small and widely shared benefits, an equitable fee award can ensure that the costs of litigation also can be shared.

In our view, the unique relationship between the election statutes at issue in this case and the foundational constitutional rights of citizens to vote and of local governments to establish and modify their political structures demonstrates that important legal rights were at stake. Plaintiff's success in obtaining a favorable statutory ruling from the Court of Appeals conferred a substantial benefit on persons other than plaintiff. As the Court of Appeals observed, plaintiff

> "acted in a representative capacity on behalf of the City of Damascus and its residents to ensure that a special election to determine whether to disincorporate the City of Damascus complied with ORS 221.610 and ORS 221.621, the statutes that govern municipal disincorporation. We conclude that the benefit conferred in this case—both in regard to the direct litigation and potentially in regard to how the legislature makes referrals to voters—is substantial enough to warrant an award of attorney fees."

*De Young II*, 300 Or App at 540.

We agree with the Court of Appeals that plaintiff acted in a representative capacity to the benefit of others and that that benefit was sufficiently substantial to support an award of fees under the substantial benefit theory. We conclude that the substantial benefit is the benefit to all residents of the state of the Court of Appeals' decision clarifying how the legislature may make referrals to voters on matters of local government structure.[3] Accordingly, we conclude that the Court of Appeals did not

---

[3] Because we conclude that plaintiff's litigation conferred a "substantial benefit" on all residents of the state, including the residents of Damascus, we need not decide whether the "direct" effect of the litigation on Damascus residents would, standing alone, constitute a substantial benefit for purposes of an equitable award of attorney fees.

err in awarding plaintiff fees under the substantial benefit theory.

The decision of the Court of Appeals is affirmed, and the case is remanded to the circuit court for further proceedings.