No. 737 August 20, 2025 639

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Paul BATES,
an individual,
and No Moke Daddy, LLC,
doing business as Division Vapor, a corporation,
*Plaintiffs-Appellants,*

*v.*

OREGON HEALTH AUTHORITY,
and Patrick Allen, in his official capacity as
Director of Oregon Health Authority,
*Defendants-Respondents.*

Multnomah County Circuit Court
21CV33671; A180270

Leslie G. Bottomly, Judge.

On appellants' petition for attorney fees and costs filed November 13, 2024; respondents' responses to appellants' petition filed November 27, 2024; and appellants' reply to respondents' responses filed December 4, 2024.

Herbert G. Grey and John Thorpe for petition and reply.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, for responses.

Before Egan, Presiding Judge, Lagesen, Chief Judge, and Pagán, Judge.

EGAN, P. J.

Plaintiffs' petition for attorney fees and costs allowed in the amount of $71,540.20 for attorney fees before the circuit court and on appeal and $631 in costs.

**EGAN, P. J.**

In this appeal, plaintiffs, a business that sells vaping products and its owner, succeeded in their challenge to ORS 431A.175(2)(f), which restricted the packaging of inhalant delivery systems (including vaping products), as an unconstitutional restriction on the free speech rights protected under Article I, section 8, of the Oregon Constitution.[1] *Bates v. Oregon Health Authority*, 335 Or App 464, 559 P3d 924 (2024), *rev allowed*, 373 Or 284 (2025). Plaintiffs now seek an award of attorney fees in the amount of $71,540.20 for work in the trial court and on appeal, relying on the court's inherent equitable authority to award fees when a plaintiff has vindicated an important constitutional right, as recognized in *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975) and its progeny. Defendants object to an award of attorney fees, requesting that we outright decline to award fees or, alternatively, that we award "no more than $34,014.45"; an amount that omits fees for work performed at the trial court and in connection with plaintiffs' unsuccessful assignments of error on appeal. For the reasons that follow, we award plaintiffs the total amount of attorney fees, $71,540.20, and costs in the amount of $631.

In support of their request to outright deny fees, defendants do not argue that we lack authority to award fees but assert that "[t]he decision whether to grant fees under *Deras* is a discretionary one" and request that we not exercise our discretion. Although defendants do not challenge our inherent authority to award fees in this case, the principles underlying our inherent authority are relevant to the determination of whether to exercise that authority in this case. Therefore, we provide the principles that support our inherent authority before turning to the parties' arguments.

The Supreme Court recently summarized the "three prerequisites for a fee award under [the court's] inherent equitable authority," explaining that "(1) the proceeding must be one in equity, (2) the party requesting fees must have been the prevailing party, and (3) the party requesting

---

[1] Article I, section 8, provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever[.]"

fees must have been seeking to vindicate a right that applies to others as well as the party itself, without an overriding personal pecuniary interest." *De Young v. Brown*, 368 Or 64, 71, 486 P3d 740 (2021).

In *De Young*, the court enumerated the types of cases in which the court has used its inherent equitable power to award attorney fees, including the *Deras* case type (the constitutional theory), which it described as cases "where a party vindicates an important constitutional right applying to all residents of the state, without personal gain to the party." *Id.* at 71.[2] In *Deras*, the court exercised its "inherent power" to award attorney fees to the plaintiff, a former candidate for state representative, who successfully challenged as unconstitutional laws limiting political campaign contributions. 272 Or at 49, 65-66. The *Deras* court explained that its inherent power to award fees "frequently has been exercised in cases where the plaintiff brings suit in a representative capacity and succeeds in protecting the rights of others as much as his own." *Id.* at 66. The court described the case as involving an "interest of the public in preservation of the individual liberties guaranteed against governmental infringement of the constitution" and reasoned that the plaintiffs "should not be required to bear the entire cost of th[e] litigation the benefits of which flow equally to all members of the public." *Id.*

More recently, in *De Young* the Supreme Court explained that "the central principle behind both the constitutional and substantial benefit theories is that the costs are shared among those who benefitted from the litigation[.]" 368 Or at 75; *see id.* at 73 ("[T]he central issue for the court is whether the nature of the benefit conferred on those beyond the plaintiff is sufficiently substantial that it would be inequitable for the plaintiff to bear the costs alone[.]"). The *De Young* court noted that "[d]espite the fact that we

---

[2] In *De Young*, the Supreme Court identified the two other types of cases in which it awards fees when the three prerequisites are met: "where a party creates, discovers, increases, or preserves a common fund of money to which others also have a claim" (the common fund theory) and "where a party's litigation confers substantial benefit on others, even if neither constitutional nor financial" (the substantial benefit theory). 368 Or at 71 (internal quotation marks omitted). Plaintiffs in this case do not raise either of the other two case types to support their petition for attorney fees.

have not always awarded fees to plaintiffs who have brought successful constitutional challenges * * *, we often have done so when a plaintiff has vindicated an important constitutional right that applies to all Oregonians." *Id.* at 72. The court also explained that "[i]n part, this is because we have assumed, often without extended discussion, that the vindication of a constitutional right likely confers a benefit on individuals other than the plaintiff and that such a benefit—since, after all, it is constitutional—may well qualify as 'substantial'" for purposes of awarding equitable fees. *Id.* at 72-73.

We now turn to the parties' arguments regarding whether or not it is appropriate to exercise our inherent authority to award fees to plaintiffs in this case. In objecting to plaintiffs' petition for attorney fees, defendants argue that plaintiffs should not be awarded fees under *Deras* because "[a]lthough this case involves Article I, section 8, of the Oregon Constitution, plaintiffs brought this action to vindicate their own pecuniary interest in selling vaping products." In support of that argument, defendants quote, among other things, a portion of plaintiffs' complaint filed at the trial court in which plaintiffs alleged that ORS 431A.175(2)(f) unconstitutionally restricted the right to free speech protected under Article I, section 8. That part of the complaint states:

> "Plaintiffs have suffered and are currently suffering monetary and non-monetary injuries, including but not limited to the following: censorship of accurate speech about products that Plaintiffs are legally allowed to sell; staff time and expense spent censoring vaping labels prior to displaying them for sale; staff uncertainty about which specific portions of a label must be censored prior to displaying products for sale; damage to Plaintiffs' branding and marketing efforts; loss of a competitive advantage over convenience stores and other retail establishments that sell lower quality products to a mass audience (including children); and the loss of business due to customer confusion or uncertainty about products Plaintiffs offer for sale."

In reply, plaintiffs acknowledge that they "were *particularly* harmed by the restrictions they challenged." (Emphasis in original.) However, plaintiffs argue that we

should not deny them equitable attorney fees on that basis. Specifically, plaintiffs assert that "[a]ttorney fees are appropriate when a lawsuit's principal purpose is to vindicate a fundamental constitutional right, even if vindicating that right also alleviates some practical or monetary burden on the plaintiff." Further, plaintiffs argue that they "had to be" harmed in a particular way by the statute restricting the packing of vaping products "or else they would have lacked standing" to bring the suit.

We agree with plaintiffs that it is appropriate to award them fees under *Deras*. In succeeding in their challenge to ORS 431A.175(2)(f), plaintiffs avoided the potential direct regulation of speech that Article I, section 8 aims to protect. *See, e.g.*, *City of Eugene v. Miller*, 318 Or 480, 492 n 12, 871 P2d 454 (1994) ("[R]egulations that limit the dissemination of expressive material must be drawn and applied with care, in order to avoid unreasonably impinging on the right of free speech and expression guaranteed by Article I, section 8.").

We also conclude that plaintiffs' interests in the outcome of the litigation does not prevent them from recovering fees under *Deras*. The type of interests that defendants identify—by quoting to the harms alleged in plaintiffs' complaint—may demonstrate an underlying motivation for plaintiffs to bring suit, as a business and its owner subject to the statute at issue, but plaintiffs' assertions do not demonstrate the type of concrete, pecuniary interest that have disqualified plaintiffs in other cases from receiving fees under *Deras*. *Cf. Vannatta v. Oregon Government Ethics Comm.*, 348 Or 117, 124, 228 P3d 574 (2010) ("[plaintiffs] here are not disinterested parties—as they state in their petition for attorney fees, they sought to have available to *them* the ability to conduct fact-finding trips and pay for meals and entertainment to facilitate *their* political speech" and that "it is questionable whether [plaintiffs'] litigation in this case actually has provided the public at large with any real substantive benefit that would support an award of *Deras* attorney fees" (internal quotation marks omitted; emphasis in original); *Vannatta v. Keisling*, 324 Or 514, 548-49, 931 P2d 770 (1997), *overruled on other grounds by Multnomah County*

*v. Mehrwein*, 366 Or 295, 462 P3d 706 (2020) ("some of the [plaintiffs] *** are not so disinterested" as the plaintiff in *Deras*, because the "overall benefit" in vindicating the right to free speech was only "ancillary" to the "individualized and different interests" sought to be vindicated by certain plaintiffs in the case "such as the political action committee and the potential political candidate").

As this court has explained, "the third condition for obtaining an award of fees under *Deras* does not mean that the requesting party cannot obtain a pecuniary benefit, but rather that the party cannot obtain a pecuniary benefit *peculiar to himself or herself*." *Tanner v. OHSU*, 161 Or App 129, 133, 980 P2d 186, *rev den*, 329 Or 528 (1999) (emphasis in original). Here, defendants identify no such pecuniary benefit peculiar to plaintiffs. In fact, defendants make broad assertions that, if accepted, would extend the circumstances that disqualify a plaintiff from an award of *Deras* fees to any case that serves a plaintiff's financial interest. That is not what the case law contemplates. Instead, the question is whether the primary thrust of the case is to vindicate plaintiffs' individualized interests. *See De Young*, 368 Or at 76; *Swett v. Bradbury*, 335 Or 378, 383-84, 67 P3d 391 (2003).

We conclude that the benefit central to this case was vindicating—and clarifying the extent of—the important constitutional right to free speech protected under Article 1, section 8. As the *Deras* court stated in justifying its fee award, this case involves the "interest of the public in preservation of the individual liberties guaranteed against governmental infringement of the constitution." 272 Or at 66. Here, because the benefit of vindicating the important constitutional right to free speech is central to this case, the individualized interests of plaintiffs, as a business and its owner affected by the statute, do not render a fee award under *Deras* unsuitable.

This case aligns with the type of cases in which the court recognized that the plaintiffs stood to benefit personally from the outcome of the litigation, but nonetheless awarded them equitable attorney fees based on the vindication of an important constitutional right. *See Swett*, 335 Or at 383-84 (rejecting the state's argument that the plaintiffs,

the American Civil Liberties Union, its director, and a public employee, were disqualified in recovering fees based on their interests in invalidating the campaign finance law, reasoning that "plaintiffs' position respecting the measure itself is not the point," but rather "the point is that plaintiffs seek to vindicate" rights protected under the Oregon Constitution); *Armatta v. Kitzhaber*, 327 Or 250, 252, 286-89, 959 P2d 49 (1998) (awarding attorney fees to plaintiffs who successfully challenged as unconstitutional a "crime victims' rights" ballot measure despite plaintiffs' interest in the measure's substance, including concerns regarding tax ramifications, limits on professional discretion, and law enforcement trespass on their property); *see also Leppanen v. Lane Transit District*, 181 Or App 136, 146-49, 45 P3d 501 (2002) (despite allegation that a volunteer signature gatherer had disqualifying individualized interests in challenging an ordinance that restricted solicitation of signatures, trial court did not err in awarding *Deras* fees when the action was brought to "vindicate the rights of all citizens subject to the challenged ordinance and their rights to free expression guaranteed by Article I, section 8, of the state constitution"); *Tanner*, 161 Or App at 133-34 (awarding fees to employees of state university that prevailed on claim of unconstitutional discrimination relating to health insurance benefits over university's objection that the employees "stand to gain a monetary benefit that extends only to a relatively small class of persons," reasoning that "the constitutional issue resolved is a matter of primary concern to the public at large"). Given that the constitutional issue resolved in this case is the right to free speech, it is a matter of concern to the public at large and, accordingly, it would be inequitable to require plaintiffs to bear the cost of the litigation alone based solely on the fact that plaintiffs have asserted individualized interests in the outcome of the case.

In sum, we conclude that plaintiffs have met the three prerequisites for a fee award under *Deras* and that it is appropriate to exercise our discretion to grant such an award.

As for the amount of attorney fees, defendants request that we reduce the $71,540.20 in fees requested by

plaintiffs to omit the work performed at the trial court and in connection with plaintiffs' unsuccessful assignments of error on appeal, so that the amount awarded is "no more than $34,014.45." We reject that request.

Defendants argue that plaintiffs should be required to seek trial-level fees from the trial court based on procedural grounds. *See* ORCP 68 C(4)(a); ORAP 13.10(2). However, plaintiffs are entitled to a reasonable amount of attorney fees for work completed throughout the entire proceeding. *See, e.g.*, *De Young v. Brown*, 300 Or App 530, 540, 451 P3d 651 (2019), *aff'd*, 368 Or 64, 486 P3d 740 (2021). Further, without any specific objections raised by defendants to the amount of fees that plaintiffs request for their trial-level work, and after reviewing the hourly rate and number of hours billed, we deem it appropriate to award the entire amount of trial-level fees. *See Dockins v. State Farm Ins. Co.*, 330 Or 1, 6, 997 P2d 859 (2000) ("In determining a reasonable attorney fee, our analysis largely will be framed by the opponent's objections to a petitioner's request. We depend on a petitioner's opponent to raise objections to the petitioner's request with as much particularity as possible * * *.").

As for defendants' request to reduce appellate-level fees to account for plaintiffs' unsuccessful arguments raised on appeal, we also that request. Although plaintiffs' success on appeal hinged on their free speech claim, plaintiffs spent a reasonable amount of time working on their other three assignments of error, especially given the interrelatedness of the claims, in order to achieve their overall success.[3] *See, e.g.*, *Makarios-Oregon, LLC v. Ross Dress-for-Less, Inc.*, 293 Or App 732, 745, 430 P3d 142, *adh'd to as modified on recons*, 295 Or App 449, 430 P3d 1125 (2018) ("Where a party succeeds on a fee-generating claim that shares common issues with other claims or unsuccessful efforts, time

---

[3] To the extent that defendants would have us deny or reduce plaintiffs' fee petition based on noncompliance with ORAP 13.10(5) for "[p]laintiffs' failure to segregate attorney time devoted to successful arguments from time devoted to unsuccessful arguments," we are not persuaded. *See* ORAP 13.10(5) (petition for attorney fees must show the time devoted to each task and the reasonableness of the amount of time claimed). Plaintiffs have filed along with their fee petition detailed hourly charts documenting the specific tasks performed billed by one tenth of an hour, and defendants do not challenge any amount of time billed nor any hourly rates as excessive.

spent working on those other matters is recoverable if it was reasonably incurred to achieve the success that the [party] eventually enjoyed in the litigation." (Internal quotation marks omitted.)).

Lastly, as the prevailing party on appeal, plaintiffs are entitled to an award of costs pursuant to ORS 20.310(1). As we have made clear, "[w]e may award only those costs that we have authority to award, and we understand our authority to extend only so far as those costs specified in ORS 20.310(2)." *De Young*, 300 Or App at 541. Therefore, we agree with defendants that it is appropriate to award plaintiffs costs totaling $631 for the prevailing party fee of $100, *see* ORS 20.190(1)(a); the appellate filing fee of $391, *see* ORS 21.010(1); and the transcript fee of $140. The remainder of plaintiffs' requested costs, including the trial court filing fee and travel expenses for plaintiffs' counsel, are not recoverable under ORS 20.310(2) and, accordingly, we decline to award them.

Plaintiffs' petition for attorney fees and costs allowed in the amount of $71,540.20 for attorney fees before the circuit court and on appeal and $631 in costs.